# Commonwealth *v.* Burtnett, Appellant.

*Food law—Adulteration of vinegar—Act of May 21, 1901, P. L. 275—Criminal law.*

1. A person may be convicted of violating the Act of May 21, 1901, P. L. 275, relating to the sale of apple or cider vinegar, where it appears that he sold a product containing approximately twenty per cent of water not derived from the apple, but added to the vinegar by the manufacturer in the process of manufacturing.

2. Pure cider vinegar within the meaning of the act must be the legitimate product of pure apple juice; it must be made exclusively

of apple cider; and having these qualities it must contain no foreign substances, drugs or acids.

3. On the trial of an indictment for a violation of the Act of May 21, 1901, P. L. 275, relating to the sale of apple or cider vinegar, the court properly excludes evidence as to the process of manufacturing the vinegar in question, where the defendant admits that twenty per cent of water had been designedly added to the apple juice produced through the mechanical and chemical appliances of his factory. In such a case it is immaterial that the use of water was necessary to reduce the acetic acid content as it came from the convertors in order to make the vinegar more palatable and salable. It is no answer to say that after such manipulation the article offered for sale was just as good as that produced by the older and simpler processes.

Argued Oct. 5, 1914.   Appeal, No. 8, March T., 1915, by defendant, from judgment of Q. S. Dauphin Co., Sept. Sessions, 1913, No. 191, on verdict of guilty in case of Commonwealth v. C. W. Burtnett.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Indictment for selling vinegar in violation of the Act of May 21, 1901, P. L. 275.

At the trial it was admitted that the defendant's vinegar contained approximately twenty per cent of water not derived from the apple, but added to the vinegar by the manufacturer in the process of manufacture.

The court rejected under objection and exception numerous offers to show the process of manufacture, and that the introduction of water was necessary to reduce the acetic acid content as it came from the convertors in order to make the vinegar palatable and salable. [2–29]

The court charged as follows:

[C. W. Burtnett is indicted for selling adulterated vinegar. An act of the general assembly of Pennsylvania passed in 1901 prohibits the sale of any article as and for cider vinegar which contains anything except

the natural and legitimate product of apple juice. It is admitted by Mr. Burtnett that the vinegar sold in this case contained twenty per cent of added water, which was not the legitimate product of apple juice; and in the light of that admission the law has apparently been violated, and we instruct that you may render a verdict of guilty as indicted, if you are satisfied beyond any reasonable doubt that this defendant's admissions are true.] [35]

Verdict of guilty, upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2–29) rulings on evidence, quoting the bill of exceptions; (35) charge of the court, quoting it.

*Wm. W. Armstrong,* with him *Charles C. Stroh,* for appellant.—When a court of law is construing an instrument, whether a public law or a private contract, it is legitimate, if two constructions are fairly possible, to adopt the one which equity would favor: Washington & Idaho R. R. Co. v. Coeur d'Alene Ry. Co., 160 U. S. 77, 101: Holy Trinity Church v. U. S., 143 U. S. 457.

The meaning of the words "foreign substances" is limited by the words "drugs or acids" which follow it: Carson v. Shelton, 128 Ky. 248.

*A. H. Woodward,* with him *John C. Bell,* attorney general, *William M. Hargest,* second deputy attorney general, and *M. E. Stroup,* district attorney, for appellee.—So long as the language of a statute used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect: Com. v. Gouger, 21 Pa. Superior Ct. 217: Haddock v. Com., 103 Pa. 243; Morris v. Balderston, 2 Brewst. 459; Com. v. American Car & Foundry Co., 203 Pa. 302; Com. v. Pedder, 208 Pa. 28.

OPINION BY ORLADY, J., February 24, 1915:

The indictment in this case charges that the defendant "did sell as and for apple and cider vinegar a certain substance, article and compound which was not then and there the legitimate product of pure apple juice, and not made exclusively of apple cider, contrary," etc. While this record presents thirty-five assignments of error, counsel on each side concede that the controversy is narrowed to a very simple question. The facts are not in dispute, and on the trial, the manufacture of the article, its sale, the taking of the sample, its chemical analysis, and the further fact that the vinegar in question contained twenty per cent of water "which was added to it in the process of its manufacture," were admitted by the defendant. The Act of May 21, 1901, P. L. 275, which is an amendment of earlier legislation on this subject, provides, viz.: "No vinegar shall be sold or exposed for sale as apple or cider vinegar which is not the legitimate product of pure apple juice, or vinegar not made exclusively of said apple cider, or vinegar in which foreign substances, drugs or acids shall have been introduced, as may appear upon proper test:" By the plain words of this act it is apparent that vinegar or cider to be lawfully sold in Pennsylvania must be, 1st, the legitimate product of pure apple juice; 2d, vinegar made exclusively of apple cider; 3d, it must not contain foreign substances, drugs or acids. The product sold by the defendant contained approximately twenty per cent of water not derived from the apple, but was added to the vinegar by the manufacturer in the process of manufacture.

The statute is framed in plain words of unmistakable meaning. The intention of the legislature is manifest, and it must be accepted as binding. Cider vinegar is defined by stating the qualities which it must possess. While the words used describe a negative condition, if framed into an affirmative form the statutory definition of cider vinegar is exactly the same. It must be the

legitimate product of pure apple juice. It must be made exclusively of apple cider, and having these qualities it must contain no foreign substances, drugs or acids. In a statute the meaning of words may be this or that, according to the subject, context and other particular circumstances. The province of the courts is to determine the meaning the legislature intended them to have. The rule of strict construction in favor of the accused is not violated by giving the words a reasonable meaning, according to the sense in which they were intended, even though in a different connection a more restricted meaning would have been ascribed to them: Com. v. Gouger, 21 Pa. Superior Ct. 229.

In the use of the word legitimate, as applied to pure apple juice, the dictionary sense is in harmony with that of our everyday use of the term—real—genuine—not false, counterfeit or spurious—reasonable. And so with the word exclusively, which lexicographers define to mean—to the exclusion of all others; without admission of others to participation. So it must be held that apple or cider vinegar in Pennsylvania is limited to the legitimate product of pure apple juice, which is made exclusively of said pure apple cider, and that the addition of twenty per cent of water thereto produces a different product from that authorized by our laws. And this whether the water is added in the process of manufacture or for the purpose of making it more palatable and salable. An examination of the earlier legislation on the subject emphasizes the legislative intention to fix a standard of apple or cider vinegar that would prevent imposition on the purchasing public or be injurious to health.

In the Century Dictionary, 1911 edition, adulteration is defined as "The act of adulterating, or the state of being adulterated or debased by admixture with something else, generally of inferior quality; the use, in the production of any professedly genuine article, of ingredients which are cheaper and of an inferior quality,

or which are not considered so desirable by the consumer as other or genuine ingredients for which they are substituted.

The complaint of the defendant in this case is that the court excluded evidence to show the method of making its product, which is as follows: "Fresh apples are first ground to pulp and the resultant pomace is pressed in heavy, power-driven presses to extract the juice which consists of about eighty-five per cent water and the remainder principally sugar in solution. The resultant apple juice or cider is then fermented in wooden vats, through the action of ferments artificially added or derived from the air, until the sugar is converted into alcohol, and the alcohol in this fermented cider is then subjected to an acetous fermentation by running it through generators. These generators are large, upright, cylindrical, wooden structures about sixteen feet in height and six feet in diameter, filled with corn cobs or beech shavings to bring the cider in contact with the air. During the slow leeching of the fermented cider through these generators, the alcohol is so oxidized and acted upon by ferments with which the generators have been charged or derived from the air, that the alcohol is converted into acetic acid and the effluent from these generators is usually filtered or otherwise clarified."

The court excluded a large number of offers for the reason that in the light of the admissions made by the defendant on the trial, that the vinegar contained approximately twenty per cent of water which had been designedly added to it by the manufacturer, that the resultant product was not the legitimate product of pure apple juice, nor was it made exclusively of said apple cider. The jury were instructed to return a verdict of guilty, if satisfied beyond a reasonable doubt that the defendant's admissions were true.

It must be conceded that the object of this legislation is to prevent deception in the sale of cider vinegar, and

that the definition of apple or cider vinegar was made to exclude all foreign substances, drugs or acids. The word pure, means not only free from all foreign substances, but in its original sense means free from any defiling or objectional mixture, and in limiting apple or cider vinegar to the legitimate product of pure apple juice or apple cider the legislature intended to prevent adulteration by diminishing or lessening the active properties of the cider vinegar, fully as much as in affecting the color or the addition of deleterious substances. The one is as much of an adulteration as the other, and after the addition of this twenty per cent of water the product was an assimilated or adulterated one in imitation of the pure cider vinegar defined by the statute.

We are not concerned with the healthfulness or dangerous qualities of the vinegar sold by this defendant. Our only concern is whether its sale was inhibited by our laws. The object of the pure food acts is to protect, not only the dealer and jobber, but the retail purchaser and consumer, otherwise the law would be of little practical value. The entire act is to be read, in order to get its true intent and meaning, and we feel that the trial judge was right in holding that the offers made by the defendant were immaterial and irrelevant in the light of its admission that twenty per cent of water had been designedly added to the apple juice produced through the mechanical and chemical appliances at their factory. The suggestion in the offers that the use of water was necessary to reduce the acetic acid content as it came from the converters in order to make it palatable and salable, is a practical concession that the manufacturer is obliged to add to the volume of his first product in order to make his business a profitable one. And it is no answer to say that after this manipulation, the article offered for sale is just as good as that produced by the older and simpler processes. It is apparent that it is in violation of a

statutory prohibition, and is the argument of one who seeks to evade or avoid a legal specification. The public requires that food should be absolutely and unquestionably pure. The requirements of this act may embarrass dealers in this class of goods, but it is well known that the adulteration of food products has grown to such an enormous extent, as to menace the health of the people. To redress such evils is a plain duty and a difficult task. It is immaterial whether the foreign matter is or is not injurious to health. The addition of pure water is an adulteration—a debasement, a vitiation by a foreign substance. See Com. v. Schaffner, 146 Mass. 107; Com. v. Waite, 11 Allen (Mass.), 264; State v. Campbell, 64 N. H. 402. The courts construe the laws—they do not make them. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expediency with the law-making power: Cooley, Const. Lim., chap. 7, 236.

The assignments of error are overruled, and the judgment is affirmed.