## Nolan v. Jones, Appellant.

*Constitutional law—Declaration of rights—Privileges and immunities of citizens—Cold storage law—Act of May 16, 1913, P. L. 216.*

The Act of May 16, 1913, P. L. 216, entitled "An Act for the protection of the public health and the prevention of fraud and deception, by regulating the storage and sale of cold storage foods; fixing penalties for the violation of the provisions thereof, and providing for the enforcement thereof," and providing that certain named articles should not be sold for food after having been held in a cold storage warehouse for a certain number of months specified, is not unconstitutional as violating Article I, Sec. 1, of the Constitution of Pennsylvania, or as violating the Fourteenth Amendment of the Constitution of the United States.

Laws enacted for the protection of human life, or for the prevention of fraud and the remedy of public evils are entitled to a liberal construction.

Argued April 25, 1917. Appeal, No. 120, April T., 1917, by defendant, from decree of C. P. Allegheny Co., July T., 1916, No. 665, on bill in equity in case of Edward S. Nolan v. Edward P. Jones et al. and Union Storage Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Bill in equity for an injunction to restrain the representatives of the Dairy and Food Division of the Depart-

ment of Agriculture from preventing plaintiff from selling butter as food which had been in cold storage for more than nine months.  Before CARPENTER, J.

The case turned upon the constitutionality of the Act of May 16, 1913.

The court below decided that the act was in violation of the declaration of rights of the Constitution of Pennsylvania and the Fourteenth Amendment of the Constitution of the United States and awarded an injunction.

*Error assigned* was the decree of the court.

*William M. Hargest,* Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General and *J. A. Langfitt,* for appellants.—Every possible construction and presumption should be indulged in to sustain the constitutionality of the Act of May 16, 1913, P. L. 216. The court below has violated this principle: Sinking Fund Cases, 99 U. S. 700; Mugler v. Kansas, 123 U. S. 623; Sharpless v. Mayor, Etc., of Philadelphia, 21 Pa. 147; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Com. v. McCloskey, 2 Rawle 369; Com. v. McWilliams, 11 Pa. 61.

If there is a reasonable relation between the subject-matter of this statute and the public health or welfare, it is a proper exercise of the police power: Barbier v. Connolly, 113 U. S. 31; Lawton v. Steele, 152 U. S. 133; Powell v. Penna. 127 U. S. 678.

The details of a statute exercising the police power are for the legislature, not for the court: Powell v. Com., 114 Pa. 265; Com. v. Pflaum, 50 Pa. Superior Ct. 55; Com. v. Kevin, 202 Pa. 23; Com. v. Crowl, 245 Pa. 554; Com. v. Burtnett, 58 Pa. Superior Ct. 604.

*N. R. Criss,* for appellee.—Whether the legislation has or has not a substantial relation to the public health is a judicial question, in spite of all the dicta to the contrary: Mugler v. Kansas, 123 U. S. 623; Lawson v. Steele, 152 U. S. 133.

The equal protection clause in the fourteenth amendment prevents arbitrary restrictions or regulations which do not apply to all persons alike, or which do not apply alike to all persons in a certain class; and arbitrary classification is not allowable: Yick Wo v. Hopkins, 118 U. S. 356; Gulf, Colorado, Etc., Ry. Co. v. Ellis, 165 U. S. 150; Cotting v. Kansas City Stockyards Co., 183 U. S. 79.

OPINION BY ORLADY, P. J., July 13, 1917:

The plaintiff is a wholesale dealer in butter, eggs and cheese, in the City of Pittsburgh. The personal defendants are the representatives of the Dairy and Food Division of the Department of Agriculture of this Commonwealth. The last-named defendant is an incorporated storage company. On June 9, 1915, the plaintiff placed seventy-eight tubs of creamery butter in warehouse, number 5, of the storage company, and subsequently withdrew all except three tubs, each containing approximately sixty-three pounds. The three personal defendants, acting in discharge of their duty on March 14, 1916, visited the cold storage warehouse, and after inspecting the three tubs of butter and ascertaining that they had been more than nine months in storage, affixed to each tub two official tags or pasters, one reading "Stored beyond legal limit. Not salable for food under penalty of the law." The other reading "Official, must not be removed under penalty of the law. Not wholesome, unfit for use as food." Each label bearing the official notice of the "Pennsylvania Department of Agriculture, Dairy and Food Division." The effect of these tags or pasters was to prevent the plaintiff from making sale of the contents, as "best creamery butter," and to prevent the storage company from delivering them as such a commodity. The plaintiff filed this bill in equity praying for an injunction, and after hearing on bill and demurrer the court entered a decree that the defendants be enjoined and restrained from placing or maintaining

on the three tubs of butter the tags, pasters, or markings whatever, under the pretended authority of an act approved May 16, 1913, P. L. 216, known as the cold storage act, and from doing any act or thing calculated or tending to prevent or interfere with the free sale of said butter for food; and the Union Storage Company be enjoined and restrained from refusing to deliver to the plaintiff or order the butter mentioned, except for good and sufficient reason, other than that the same have not been withdrawn from cold storage within nine months.

The court found as facts, the matters above stated, and held as a conclusion of law: First—that the court had jurisdiction to dispose of the case as presented; Second—Section 16, of the act approved May 16, 1913, known as the Cold Storage Act, is in conflict with the Constitution of Pennsylvania, in that it violates the provisions of Article I, Section 1, entitled,—declaration of rights; Third—that the said section is unconstitutional and void, being in violation of the Fourteenth Amendment to the Constitution of the United States, which provides, inter alia, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The act in question is entitled, "An Act for the protection of the public health and the prevention of fraud and deception, by regulating the storage and sale of cold storage foods; fixing penalties for the violation of the provisions thereof, and providing for the enforcement thereof." The sixteenth section provides, "No person, firm or corporation shall sell, offer, or expose for sale, any of the herein-named foods which shall have been held for a longer period of time than herein specified, in a cold storage warehouse or warehouses, to wit: Whole carcasses of beef, or any parts thereof, four (4) months; whole carcasses of pork, or any parts thereof, six (6)

months; whole carcasses of sheep, or any parts thereof, six (6) months; whole carcasses of lamb, or any parts thereof, six (6) months; whole carcasses of veal, or any parts thereof, three (3) months; dressed fowl, drawn, five (5) months; dressed fowl, undrawn, ten (10) months; eggs, eight (8) months; butter, nine (9) months; and fish, nine (9) months.

The learned court below states, "No one will question the right of the legislature to enact laws for the protection of the public health, nor will any person question the constitutional power of the legislature to enact laws prohibiting the sale of impure foods, or of any imitation of any food, as genuine. It may be that, after proper scientific investigation the legislature can decide certain foods or articles used for foods, deleterious to health and prohibit their sale; though every one knows that opinions concerning what we shall eat and what we shall drink in order to avoid sickness, differ widely. It will be noticed that the cold storage act does not assert that it is based on scientific experimentation or observation. In so far as any reason for its enactment is disclosed, the time limit for storage of the articles mentioned might have been cut down one-half or doubled."

As we understand the learned judge below, his objection to the act is not so much a violation of constitutional power by the legislature, as it is a wrong exercise of that power in fixing the time limit for cold storage of edibles. No such exaction has ever been made of the legislature by any court, and the criticism is sufficiently answered by an examination of the title to the act, and the carefully prepared schedule for the different articles mentioned in the sixteenth section.

Counsel for appellant is frank enough to admit that it would be a reasonable regulation to not permit the holding of butter for a longer period than twelve months, instead of nine months named in the statute. The courts are not required to pass on such questions of fact, as this is purely within the province of the legislature, and has

been so declared in Federal and State courts in very many decisions.

In Powell v. Penna., 127 U. S. 678; 32 L. Ed. 253, Mr. Justice HARLAN says, "It is scarcely necessary to say that if this statute is a legitimate exercise of the police power of the State for the protection of the health of the people, and for the prevention of fraud, it is not inconsistent with that (14th) amendment; for it is the settled doctrine of this court, that, as government is organized for the purpose, among others, of preserving the public morals, it cannot divest itself of the power to provide for those objects; and that the 14th amendment was not designed to interfere with the exercise of that power by the states."

In Schollenberger v. Penna., 171 U. S. 1; 43 L. Ed. 49, it is stated, "The legislature of the State has the power in many cases to determine as a matter of State policy, whether to permit the manufacture and sale of articles within the State, or to entirely forbid such manufacture and sale, so long as the legislation is confined to the manufacture and sale within the State. These are questions of public policy which as was said in the case of Powell v. Penna., belong to the legislative department to determine."

In Lawson v. Steele, 152 U. S. 133; 38 L. Ed. 385, a case frequently quoted, and in this day must be well understood by courts and lawyers, it is said, "The extent and limits of what is known as the police power has been a fruitful subject of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include everything essential to the public safety, health and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance......A large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such inter-

ests.   See also Mugler v. Kansas, 123 U. S. 623; 31 L. Ed. 205.

The legislative will is clearly stated to be, that for the protection of the public health, and the prevention of fraud and deception, it is not safe or proper to keep butter more than nine months in cold storage, as a healthful food article.

As stated by our brother HENDERSON, in Com. v. Pflaum, 50 Pa. Superior Ct. 55, and in Com. v. Crowl, 52 Pa. Superior Ct. 544 (affirmed in 245 Pa. 554). "It is not necessary that injury has been done or a wrong perpetrated. The possibility that such results may take place warrants legislative intervention under the police power. It is not a sufficient denial of the exercise of these powers to say that the prohibited article is wholesome and not injurious to the customer. The wholesomeness of the prohibited thing will not render the act unconstitutional. The temptation to fraud and adulteration may be a consideration leading to regulative or prohibitive legislation. If it were not so, courts would become the triers of the expediency of such legislation, and the authority which the people committed to the legislature, would be transferred by judicial action to the courts." And in Commonwealth v. Burtnett, 58 Pa. Superior Ct. 604, we said, "The public requires that food should be absolutely and unquestionably pure. The requirements of that act may embarrass dealers in this class of goods, but it is well known that the adulteration of food products has grown to such an enormous extent as to be a menace to the health of the people." See also Com. v. Kevin, 202 Pa. 23; Com. v. Shaleen, 215 Pa. 595.

It must be conceded, that whether in or out of cold storage butter is only wholesome as food during a limited period of time, depending on its grade, purity and surroundings, and that at some time, though it may be difficult to ascertain it, the best of butter does become unfit for food. The tribunal to fix that time is not the courts, but the legislature. Our legislature has named

nine (9) months, and the courts may well rest content with the propriety of its decision.

In People v. Finklestine, 152 N. Y. Supp. 875, it is aptly stated, "We certainly cannot say, as a matter of judicial cognizance that indefinite cold storage of food products may not result in deterioration which will be detrimental to health. If it may so result, it is for the legislature to declare for how long such cold storage may be presumed to be harmless."

Our act does not prohibit the cold storage of food products, and therefore does not tend to destroy either the traffic in foods or the business of refrigeration. It merely aims at regulation, and there is nothing before us from which we can say that this regulation is unreasonable. Laws enacted for the protection of human life, for the prevention of fraud, and the remedy of public evils are entitled to a liberal construction. The purpose of the legislature in the passage of this act is most commendable, and the statute should receive a construction that will fully and effectively accomplish the object of its enactment. It is no part of our business to discuss the wisdom of this legislation. It is aimed at the traffic in foods of doubtful purity and wholesomeness, and it would be an unreasonable construction to hold, that the language of the title is too restricted to cover the provisions of the section in controversy. It touches very closely common rights and privileges, and therefore specially requires a common sense administration. The fact that the sale of the prohibited substance, in a pure state, may be wholesome and not injurious, is irrelevant in a judicial inquiry. That it may become dangerous to health is a sufficient warrant for legislative consideration and action. It does not prohibit the subsequent traffic in the article, after it has been held for nine (9) months in cold storage, but plainly declares that it is not after that time wholesome and fit for use as food, and that it shall not be salable as such. The speculator in foods may make a wrong guess on the prospective values

of a stored food article, and be obliged to sell his hoarded food, as a trade article of some other name and of much less value. The public health is the primary object of legislative consideration.

The same beneficient regulation is made to affect the sale of milk, ice cream, oleomargarine, vinegar, baking powder, candies, etc., in which arbitrary standards have been fixed by the legislature, and to adopt the reasons of the learned court below would be to take a long step backward from the protective health legislation of this day.

The decree of the court below is reversed, the demurrer is sustained and the bill of complaint is dismissed, with costs to be paid by the appellee.