Commonwealth of Pennsylvania *v.* Howard C. Long, Appellant.

Argued September 29, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE, and WHITMORE, JJ.

*Otto Bosshard,* and with him *Andrew G. Smith,* for appellant.

*David Glick,* Special Deputy Attorney General, and with him *Andrew T. Park,* District Attorney, *John F. Haggerty,* Assistant District Attorney, and *Cyrus E. Woods,* Attorney General, for appellee.

OPINION BY KELLER, J., November 20, 1930:

This appeal presents no new question. Every point raised by the appellant has already been passed upon by the Supreme Court or by this court and decided against him. The law is settled in Pennsylvania that the term 'medicine' as used in Act of June 3, 1911, P. L. 639, relating to the right to practice medicine and surgery in the Commonwealth of Pennsylvania, etc. (See amendments of July 25, 1913, P. L. 1220 and April 20, 1921, P. L. 158) refers to its broad and comprehensive meaning as the art or science having for its object the cure of diseases and the preservation of health, and that the 'practice of medicine' includes all practice of the healing art, with or without drugs. In Com. v. Seibert, 262 Pa. 345, 348, 349, where the appellant likewise used no drugs, but practiced "a science of the healing art by which all diseased conditions of the body are restored to health by regulating the blood supply to the involved areas through the nerve mechanism," the Supreme Court considered the matter exhaustively, and speaking through Mr. Justice STEWART, said: "Of controlling importance in this connection is the word 'medicine,' a word susceptible of distinct meanings; one indicating nothing more than a remedial agent that has the property of curing or mitigating diseases or is used for that purpose, while the other indicates an art of healing or science which has for its province the treatment of diseases generally. The latter has much the wider and more comprehensive significance of course; and while, as so used, it may be in a sense technical, yet, unquestionably the wider is the popular sense in which

it is employed and understood. Furthermore, whatever is technical in it has been so far popularized by common usage and understanding that no one, however unlearned, can fail to observe the true distinction between medicine as a drug and medicine as a science or profession. It is in the latter sense that the word is used in the statute. Manifestly to construe it otherwise would be to defeat the object and purpose of the legislation........ The one danger provided against was not the promiscuous sale of drugs or other remedial agents but the unrestricted and unregulated practice of medicine or the art of healing, medicine here being used to denote an art or science having for its object the cure of diseases and the preservation of health, whether with aid of drugs or any other remedial agencies whatever...... Giving the act this interpretation, the defendant by his conduct brought himself unquestionably within its terms; he engaged in the practice of medicine, that is, he held himself out to the public as one instructed and skilled in the healing art. By printed sign......he represented himself as skilled in the healing art and invited the confidence and patronage of the sick and afflicted generally. The distinction that is sought to be made between neuropathy and medicine can avail the defendant nothing if we keep in mind that the legislative meaning of the latter word, when used in the expression 'practice of medicine' covers and embraces everything that by common understanding is included in the term healing art." See also the definition of the terms medicine and surgery in the opinion of President Judge ORLADY in Com. v. Byrd, 64 Pa. Superior Ct. 108, 111, 112.

We held in Com. v. Seibert, 69 Pa. Superior Ct. 271 (affirmed 262 Pa. 345), Com. v. Martindell, 82 Pa. Superior Ct. 417, and Com. v. Jobe, 91 Pa. Superior Ct. 110, that the Act of 1911, supra, applies to neuro-

paths, chiropractors and those who profess to heal diseases by vertebral manipulation as well as to those who prescribe or administer drugs, provided they do any of the things which the legislature has said they shall not do without fulfilling the requirements of the Act and obtaining a certificate of licensure, either general or limited to a branch or branches of medicine and surgery, as the case may be. These acts, which are forbidden, embrace ''to engage in the practice of medicine and surgery, or to hold himself or herself forth as a practitioner in medicine or surgery, or to assume the title of doctor of medicine and surgery or doctor of any specific disease, or to diagnose diseases, or to treat diseases by the use of medicines and surgery, or to sign any death certificate, or to hold himself or herself forth as able to do so.''

The evidence in this case is not printed in full, but from what is printed and the admissions in the record, it is clear that the appellant did do some of these things which are within the inhibition of the statute without first obtaining a license, general or limited, as before mentioned, as provided in the Act. He diagnosed diseases, (See Com. v. Martindell, supra, p. 419), and attempted to heal diseases and treat abnormal physical conditions (See definition of 'surgery' in Com. v. Byrd, supra, p. 112) by manual adjustment of alleged vertebral displacements. He was engaged in the practice of medicine and surgery, as the Supreme Court holds those terms to have been used by the legislature, and held himself out as a practitioner thereof, able to diagnose diseases and treat them in the manner above described. He admitted that he was ''practicing the healing profession known as chiropractic, and that he did not have a license as required of practitioners of medicine and surgery under the Act of 1911, P. L. 639 and its supplements.'' The facts are not in dispute. His appeal

questions,—notwithstanding our definite ruling in Com. v. Jobe, supra,—the right of the Commonwealth to bring him within the provisions of the Act of 1911.

The right of the Commonwealth, in the interests of the health and safety of its people, to regulate the practice of medicine and surgery, used in their broad and comprehensive sense, and to prescribe the conditions under which persons may pursue the profession of the healing art, diagnose diseases and prescribe remedies or administer treatment for their cure, healing or alleviation, is well recognized as a part of its police powers: Collins v. Texas, 223 U. S. 288; Dent v. W. Va. 129 U. S. 114; Graves v. Minnesota, 272 U. S. 425. The adopter of every new cult alleged to be of benefit in the healing of disease has no constitutional right to practice it as a profession upon his fellow men, because the legislature has not provided for an examination into his knowledge and skill with respect to it, or for the issuance of a license to him to practise it as a branch of the healing art. The same rule applies to him as to everybody else. He cannot practise medicine and surgery in any of its branches, the healing art in any of its forms, diagnose diseases or hold himself out as a practitioner able to make diagnoses and treat diseases, without complying with the requirements of the Act of 1911 and its supplements and amendments, and obtaining a license as provided for by that Act. That this may entail a longer course of instruction, a wider knowledge and a greater skill than he may think necessary is unimportant. The criterion is what the legislature has enacted, not what his personal opinions may be.

(2) Nor is appellant in any better position as to the other branch of his complaint. The trial judge did not tell the jury that they must find the defendant guilty, which is what is meant by a binding instruction in criminal cases: Nicholson v. Com., 96 Pa. 503,

505, 506. On the contrary he left it to them to find the defendant guilty or not guilty, explaining that if they found him 'guilty' they had nothing to do with the costs, while if they found him 'not guilty' they must dispose of the costs, with instructions on the subject. He did suggest that under the evidence they should find defendant guilty, but did not control their action or direct their verdict, and as the facts were not in dispute and the admissions of the defendant warranted no other verdict under the law, we find no ground for reversal. Even in cases where the facts are in dispute the trial judge may express his opinion upon them without being guilty of reversible error, provided he leaves the question to the jury for their decision. Thus in Com. v. Bloom, 89 Pa. Superior Ct. 308, 313, 314, 315, the court characterized the defendant's story as unbelievable to it, but told the jury they were not to be controlled by its opinion of the evidence, and we sustained the conviction; and in Com. v. Gross, 89 Pa. Superior Ct. 387, the court said in its charge to the jury, "I say to you frankly, members of the jury, that in the light of all the testimony in this case it seems to us that you ought to have no difficulty in arriving at a verdict of guilty on both counts of the indictment," but followed it with the statement that they were entirely free to determine the defendant's guilt or innocence, and were not bound by his opinion, and the judgment was affirmed. In some cases where, like this one, the facts were not disputed and the only question was whether under those facts the defendant was guilty of a violation of the statute, both the Supreme Court and this court have affirmed judgments entered on directed verdicts of guilty. See Theel v. Com., 9 Sadler 263, 22 W. N. C. 58; Com. v. Leslie, 20 Pa. Superior Ct. 529, 530. And in Com. v. Burtnett, 58 Pa. Superior Ct. 604, where the facts were likewise not disputed,

we upheld a charge which said: "We instruct you that you may render a verdict of guilty as indicted, if you are satisfied beyond any reasonable doubt *that this defendant's admissions are true.*"

There was no duty resting on the court to instruct the jury that they were the judges of the law and the facts. Our Supreme Court has fully considered that subject in several recent cases and has interpreted the law as contained in prior decisions as follows: "Of course, they [the jury] can render a general verdict of not guilty and to that extent are the ultimate judges of both the law and the facts; but that does not absolve the court from its duty of declaring the law to them nor absolve them from the duty of accepting it when so declared." Com. v. Bednorciki, 264 Pa. 124, 129. "It is the duty of the jury to take the law from the court, to the same extent in a criminal case as in any other, and a trial judge can properly so instruct; this point is now settled in Pennsylvania;" Com. v. Bryson, 276 Pa. 566, 570. "We think, as stated in the above mentioned opinion of Mr. Justice MITCHELL [concurring opinion in Com. v. McManus, 143 Pa. pp. 64, 98] it is better for the court to volunteer nothing to the jurors about their being judges of the law, and, if an appropriate request is made for instructions along those lines, the constitutional language (Art. I, sec. 7) had better be adhered to and the jurors told simply that they have the 'right to determine the law and the facts under the direction of the court,' which means only that they have the right to determine, by a general verdict, the result of applying the law, as stated by the court, to the facts as they find them," Com. v. Castellana, 277 Pa. 117, 121, 122. No instructions were asked by this defendant on the subject and the court committed no error in not voluntarily referring to it.

The assignments of error are overruled. The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence.