## Pennsylvania Chiropractors' Assn., etc., v. State Board of Medical Education and Licensure et al.

*Harold R. Prowell* and *Charles D. Cowley*, for plaintiffs.

*George J. Barco*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for defendants.

HARGEST, P. J., February 24, 1941.—This matter comes before us on preliminary objections to a bill of complaint.

Plaintiff, an unincorporated association by a "trustee ad litem", brings this action against the State Board of Medical Education and Licensure (hereinafter called the board) and its members, averring that the Act of June 3, 1911, P. L. 639, 63 PS §401 et seq. (hereinafter called the act), does not constitutionally authorize the regulation of chiropractic, a system of drugless therapy, and that the board, in attempting to regulate such practice, is acting unreasonably and arbitrarily and in violation of the constitutional rights of such practitioners. The name of defendant was changed from "Bureau" to "Board" by The Administrative Code of 1929.

The bill avers that under the said act two types of licenses are provided, namely: (*a*) License to a physician and surgeon for the practice of medicine and surgery in all its branches, and (*b*) a special license limited to the practice of some branch of medicine and surgery; that the legislature has failed to set forth any requirements to be imposed upon the applicant for the special license authorized in section 6 of the act; and that the board has defined "drugless therapy" to include chiropractic, and has issued a limited number of drugless therapy licenses to persons who engage in such practice, and has prosecuted and threatened to prosecute those persons who so engage and who have not secured a drugless therapy license; that among such persons threatened are the members of plaintiff association; that it is the duty of the legislature to determine and set forth the requirements for such a license, which duty cannot be delegated to an administrative board, and that chiropractic was comparatively unknown when the Act of 1911 was passed but has now attained a recognized professional standing as a drugless profession, and is fostered by statutes administered by boards of licensure, the membership of which is composed of chiropractors in 36 States; that the practice is an inherently lawful pursuit and professional in its nature, and the application of section 6, subjecting the practitioners "to the whim and caprice of the defendant Medical Board," is unconstitutional; that the board has approved schools within and without the Commonwealth for physiotherapy and chiropody and has published a list of such schools, but has consistently failed to approve any school of chiropractic, although at least one Pennsylvania school of this character is on the approved list in other States. The bill asks that the act be declared void as applied to chiropractic or practitioners of chiropractic in its entirety and the board be restrained from applying the provisions of the act thereto.

The preliminary objections are: (1) That the bill is defective for want of specifically named parties plaintiff;

(2) that the appellate courts of the Commonwealth have already decided every legal question raised by the bill against the contentions therein set forth; (3) that there are no sufficient facts averred to sustain the prayers of the bill; and (4) that under the cases specifically set out the bill should be dismissed.

## Discussion

1. Rule 2152 of the procedural rules adopted by the Supreme Court, and promulgated as effective November 6, 1939, 332 Pa. cvii, provides:

"An action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association. An action so prosecuted shall be entitled 'X Association by A and B, Trustees ad Litem' against the party defendant."

We are of opinion that this action is in the proper form under this rule, so far as the caption is concerned.

Plaintiff association may bring the action in the form in which it has been brought, but the most serious question is whether there is any right in this unincorporated association to the relief sought, which is to enjoin the board from examining applicants and issuing licenses for the practice of drugless therapy, from interfering with the practice of chiropractic, and from applying any of the provisions of the act to that practice.

The specific complaint is that the board has defined drugless therapy to include chiropractic; has licensed some persons to engage in such practice, and threatens to prosecute others who have engaged therein without a license; and that the board has not approved any school of chiropractic within or without the Commonwealth, although at least one Pennsylvania school is approved in other States.

This controversy centers around (a) a license to practice, and (b) the approval of a school. A license to practice medicine and surgery, or a limited branch thereof, is a personal matter. It involves a property right when such license is granted, and that right in the license or the

right to the license affects the individual holder or applicant. We know of no principle that will authorize an unincorporated association to stand in the shoes of such holder or applicant and sue for him. This is not a collective bargaining proposition. If there is any enforcible right in equity or otherwise, it is at the instance of the individual who claims the right. The same principle must be applied to a school. If there is any school which claims that it has a right under the law to be approved, it may, upon refusal of such approval by the board, bring its action. Furthermore, it would seem that in either case, namely, a refusal of a license to an applicant or a refusal to approve a school, the remedy would be by mandamus and not in equity. Where there is a claim by an individual of a right to practice without a license, the remedy may also be at law.

For these reasons we think the first preliminary objection is sound.

2 and 4. The next question in this case is whether the legal questions raised by this bill have been already decided against plaintiff's contentions by the appellate courts of this Commonwealth.

In Christy v. State Board of Medical Education and Licensure, 46 Dauph. 69, this court sustained preliminary objections to the bill on the ground that the appellate courts have previously decided every legal question raised by the bill, and, on appeal, the Supreme Court said (339 Pa. 65, 67) :

"An examination of appellants' bill discloses that no legal questions are thereby either raised or suggested, except such as were necessarily involved in and determined against them by cases already decided by this Court and by the Superior Court, wherein the validity of the Act of 1911 and its enforcement have been questioned and considered, particularly *Long et al. v. Metzger et al.*, 301 Pa. 449, *Commonwealth v. Martindell*, 82 Pa. Superior Ct. 417, and *Commonwealth v. Jobe*, 91 Pa. Superior Ct. 110. This being true, it follows that the court below acted

properly in sustaining appellees' preliminary objections under Rule 48 of the Equity Rules, and in dismissing the bill: *Long et al. v. Metzger et al.*, supra."

See also Kowatch v. Home B. & L. Assn., 131 Pa. Superior Ct. 517. In the latter case, in addition to applying the rule above quoted, the bill was dismissed on the ground that the matter averred in it was res adjudicata.

In Bickley v. Public Utility Commission, in an opinion of this court filed February 3, 1941, to 1427 Commonwealth docket, 1940, on the question of res adjudicata we referred to Hochman v. Mortgage Finance Corp., 289 Pa. 260, 263, 265, Wallace's Estate, 316 Pa. 148, 153, and Detwiler v. Williamsburg Borough, 116 Pa. Superior Ct. 21, and we therein said:

"It is definitely settled that when issues have been adjudicated upon the facts between the same parties the case is concluded not only as to the questions raised but as to all questions which might have been properly raised and passed upon."

The doctrine of res adjudicata cannot be applied to this case because there was no previous case between the same parties upon the same facts. The question, therefore, is whether the cases in the appellate courts settled all the legal questions which have been raised or suggested by this bill.

The precise and specific attack is that section 6 of the act is an unconstitutional delegation of legislative power to the board, if the act be used to regulate the practice of chiropractic and the drugless branches of the medical art. An examination of the authorities shows that this question has not been considered in any appellate case dealing with this statute.

The principles involved in the consideration of the constitutionality of a statute because of a failure by the legislature to set up standards within which the act may be enforced are of comparatively recent development, due to the ever-increasing administrative agencies. We are, therefore, compelled to hold that, strictly speaking, the specific issue has not been settled.

If we are wrong in our first conclusion sustaining the preliminary objections, according to the Equity Rules, it would follow that the preliminary objection in this particular should not be sustained. Such a conclusion would require defendant to answer upon the merits. Then if defendant answered upon the merits, it would again raise at the threshold of the case the same question of law that there is no merit in plaintiff's case because there is a sufficient standard to justify the board in doing what it has done. Inasmuch as the study of the cases upon the preliminary objection involved the study of this question upon the merits, it would bring us back to the same legal problem which is now before us, and in view of the importance of the case we now decide, we think it would be useless circumlocution to require an answer on the merits which would simply raise the question that now confronts us and which we can readily dispose of from our present examination of the authorities.

The constitutionality of section 6 of the act has been many times before the appellate courts. In Commonwealth v. Byrd, 64 Pa. Superior Ct. 108, Commonwealth v. Martindell, 82 Pa. Superior Ct. 417, Commonwealth v. Jobe, 91 Pa. Superior Ct. 110, Commonwealth v. Long, 100 Pa. Superior Ct. 150, and Long et al. v Metzger et al., 301 Pa. 449, its constitutionality was attacked as it applied to the licensing of chiropractors.

In Commonwealth v. Seibert, 69 Pa. Superior Ct. 271, 262 Pa. 345, the attack involved the licensing of neuropaths.

It has been uniformly held that the act was both reasonable and constitutional. This new attack is based upon the development of the law growing out of the creation of numerous administrative boards and agencies and the exercise of power by such agencies beyond that authorized by the creative statute, which made necessary a definition by the courts of the rules and the legal principles to be applied to such agencies.

Plaintiff contends that upon resort to the line of cases of which Holgate Bros. Co. v. Bashore et al., 45 Dauph.

274, 331 Pa. 255, and Penna. R. R. Co. v. Driscoll et al., 330 Pa. 97, are examples this act is unconstitutional as a delegation of legislative power if section 6 is held to authorize the board to regulate the practice of chiropratic and other drugless branches of the healing art.

In Green v. Milk Control Commission et al., 340 Pa. 1, 3, Chief Justice Schaffer said:

"The principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extra judicial. They should act within the strict and exact limits defined. [Citing cases.]"

In Soble et al. v. State Board of Pharmacy, 49 Dauph. 145, we held that the act which provided that no pharmacy should be operated without a license which should be granted to persons or corporations "as the Board deems qualified to conduct such business" was entirely without a standard, and therefore involved an illegal delegation of legislative power.

And in Fire Association of Philadelphia v. Taggart, Insurance Commissioner, 49 Dauph. 386, where the Insurance Commissioner asserted a new interpretation of The Insurance Company Law entirely different from that which had been applied to insurance companies for more than a quarter of a century under the same law, we said:

"In the evolution of the law in the administration of democratic government, no proposition has been currently attracting more discussion than the tendency of extra judicial tribunals and governmental officials to reach out and exercise more powers than they have heretofore been attempting to exercise. In the instant case, if the Insurance Commissioner has the power, he has had it for 29 years and yet has never attempted its exercise. Just such attempts in endeavoring to exercise or to secure additional powers have brought from the courts serious discussion emanating in the principle that the granting of such extra judicial powers shall be strictly construed. [Citing cases.]"

The present controversy does not present a situation in which a governmental agency is attempting the exercise of new powers or powers different from those which it has consistently exercised. The board has maintained a consistent attitude, and the present attack is that it is asserting power that is unconstitutional because there are no standards which have been laid down to justify the conduct of the board. In the case of a constitutional attack upon an act of assembly we must find, before we strike down either the act or the operation of the agency under it, that the Constitution is clearly or palpably violated. But when attack is made upon a statute which has long been upon the books, and upon a course of conduct under the statute which has been consistently followed, before such act or conduct can be stricken down the illegality must be especially clear.

In Commonwealth v. Gilligan, 195 Pa. 504, 511, the court said:

"The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions. While these are not reasons for refusing to declare it void if in contravention of the constitution, yet they are strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it our duty now to set it aside."

In Sugar Notch Borough, 192 Pa. 349, 358, the court referred to an act which had been in force for 12 years, and twice before that court and many times before other courts and said it was rather late to question its constitutionality.

This principle may be applied with added force in the instant case because, while the statute has been in force for 29 years and been before the appellate courts many times, its constitutionality has been uniformly sustained, and it would be at least unfortunate after it has weathered all those attacks now to find some new constitutional theory upon which to strike it down.

This new attack is predicated, among other things, upon the theory that standards must be set up in an act, and, when not sufficiently defined, the administrative agency cannot operate under the act. And in the case of Pennsylvania R. R. Co. v. Driscoll et al., 330 Pa. 97, 109, there is language which is relied upon for this position. The court there said:

"Where there has been such a change in relevant conditions, and a statute is challenged on the ground of its unconstitutionality as applied to the new facts, evidence must be admitted to sustain the challenge. The Supreme Court said in *Nashville, C. & St. L. R. R. Co. v. Walters:* 'A statute valid when enacted may become invalid by changing conditions to which it is applied. The police power is subject to the constitutional limitation that it may not be exercised arbitrarily or unreasonably. Unless the evidence and the special facts relied upon were of such nature that they could not conceivably establish that the action of the State [was] . . . arbitrary and unreasonable, the State Supreme Court obviously erred in refusing to consider the evidence.' "

In the instant case there is no question of changed conditions. There is no new evidence. When the Act of 1911 was passed chiropractic was in its infancy, and it is averred that it has grown so as to be regulated in 36 States. It is contended that, because chiropractic is not named in the statute, its practice cannot therefore be regulated by the board.

In Commonwealth v. Long, 100 Pa. Superior Ct. 150, 155, the court said:

"The adopter of every new cult alleged to be of benefit in the healing of disease has no constitutional right to practice it as a profession upon his fellowmen, because the legislature has not provided for an examination into his knowledge and skill with respect to it, or for the issuance of a license to him to practice it as a branch of the healing art. The same rule applies to him as to everybody else. He cannot practice medicine and surgery in

any of its branches, the healing art in any of its forms, diagnose diseases or hold himself out as a practitioner able to make diagnoses and treat diseases, without complying with the requirements of the Act of 1911 and its supplements and amendments, and obtaining a license as provided for by that Act. That this may entail a longer course of instruction, a wider knowledge and a greater skill than he may think necessary is unimportant. The criterion is what the legislature has enacted, not what his personal opinions may be."

In Commonwealth v. Jobe, 91 Pa. Superior Ct. 110, 113, the court said:

"Specialists in, or advocates of, any particular branch or division of medicine or surgery, by whatever newly coined word it may be known, should know by this time that the declared policy of our laws regulating medicine and surgery is that no person shall engage in the practice of that profession in the Commonwealth without complying with the statutory requirements as to professional qualifications and that efforts to evade those requirements are engaged in at their peril."

In Abbate v. State Board of Medical Education and Licensure et al., 43 Dauph. 250, a naturopath made another attack upon the constitutionality of the act, and it was there said (pp. 256, 257):

"It is true that the act does not provide for the licensing of naturopaths as such, but if anything is well settled by the decisions of the Supreme and Superior Courts it is that this legislation provides a general system for the regulation of the practice of the art of healing comprised in the words medicine and surgery, taken in their most comprehensive sense, whether with aid of drugs or any other remedial agencies whatever. . . .

"We think this act is certainly comprehensive enough to set forth what object the legislature desired to attain. The fundamental purpose of the entire medical act was to protect the health and lives of the citizens of this Commonwealth from the treatment by incompetent men who

hold themselves out to the public as being doctors of some branch of medicine."

In Commonwealth v. Seibert, 69 Pa. Superior Ct. 271, 273, the court said:

"The law is not concerned with the question whether Chiropractice or Neuropathy is as good or better than other systems of treatment, but it is concerned with the grave question, that before any one shall undertake, no matter by what system, to diagnose, treat, operate upon, to prescribe or administer remedies or treatment for any physical or mental ailment or condition of another, for a fee or other consideration, he shall possess the learning and skill required by the statutes, produce a degree or diploma from a college meeting the requirements enumerated in the statute, and pass an examination before the State Board of Examiners, showing his competency . . . ."

In Commonwealth v. Seibert, 262 Pa. 345, 349, the court said:

"The manifest and only purpose of the statute was to confine the right to invite public confidence in the skill and efficiency of those who would hold themselves out to the public as medical doctors, to those only who have had an examination by an impartial board of examiners created by the statute and acting for the State, and have been accredited by said board as having met the requirements of the law and received its license."

When it comes to the question of prescribing legislative standards for a highly technical and professional examination, it is quite apparent that a statute should not be stricken down because the legislature did not define the limits of an examination to which a person desiring to obtain a limited license under the act should be subjected.

Section 6 of this act provides in part as follows:

"it shall be the duty of said Bureau . . . at its discretion, to examine any person pretending to a knowledge of any branch or branches of medicine and surgery, for the purpose of establishing regulation and State

licensure. For this purpose it shall be the duty of said bureau to establish such oversight of the instruction and teaching of the schools or colleges so pretending, if any such obtained, as is provided for in this act in the case of medical schools and colleges; and, further, they shall conduct such limited examinations, as are in their judgment necessary, for the purpose of determining whether or not the applicant has a proper degree and knowledge of his or her subject, and of determining whether, in other respects, as provided for in this act, they are worthy of registration and State licensure. For the purpose of conducting such examinations, the bureau shall have the privilege of calling to its aid men or women of established reputation and known ability in the particular pursuit under consideration . . ."

The act further provides for the issuance of a certificate to the applicant "limited to the practice of his or her pursuit in this State, this fact being plainly stated across the face of the certificate."

Section 4 of the act authorizes the board to ascertain the character of the instruction in medical educational institutions and hospitals which it may approve.

As we understand the contention of plaintiff, it is that, since the legislature has prescribed the studies required of a full practitioner of medicine and surgery, and has not prescribed the studies required for a limited license, the board cannot refuse to grant a limited license to one who has taken some course somewhere. A strict construction would rather lead to the converse as the natural inference, that, since the legislature has not prescribed the studies, if the principle of a failure to prescribe standards is to be applied, then the board has no right to license at all because it is not guided by legislative standards. The purpose of the legislature plainly is that there should be a limited license for persons pretending knowledge and instruction in a pursuit of a particular method.

These new systems are constantly being developed, such as chiropractic, neuropathy, naturopathy, and hydrop-

athy, and the legislature did not intend that they should be excluded from a limited practice within their particular fields of knowledge merely because at the time of the passage of the act the necessary educational qualifications and specific studies could not be laid down to meet the development of future systems. The legislature therefore entrusted to the board "such limited examinations as are in their judgment necessary for the purpose of determining whether or not the applicant has a proper degree and knowledge of his or her subject," and authorized the board to call in specialists in the particular branch to enable them to make the proper findings.

In Abbate v. State Board of Medical Education and Licensure et al., 43 Dauph. 250, 257, we said:

"It was impossible for the legislature to set up definite preliminary educational requirements or define professional education requirements for the reason that these new professions were not known and for the reason that it was not known how many new ones may, from time to time, come into being. Therefore, all the legislature could do was to set up an act creating a board for the purpose of supervising and regulating this type of practice; to set up in the act, by words, the object sought to be obtained; to set out the standard as nearly as possible, to be followed by the board; and to set out by statute, facts which were to be determined by the board."

It is also contended that the board has acted arbitrarily and unconstitutionally in not approving a school of chiropractic, since there have been such approvals in a number of States. We are of opinion that it is quite within the power of the legislature in the exercise of the police power to vest in a board, as it has done, the determination as to when and what character of schools it may approve. The board may readily determine that the practice, for instance, of hydropathy, has not developed into such a useful system that it would approve any school for the purpose of teaching that particular branch, and we are of opinion that it cannot be held, as a matter of law, that the

board has acted in an arbitrary or capricious manner merely because it has not approved schools of chiropractic such as other States may have done.

For these reasons we think the bill of complaint does not disclose any right to the relief sought.

And now, February 24, 1941, the preliminary objections to the bill are sustained and the bill dismissed at the cost of plaintiff.