## Osteopaths as School Physicians

BARCO, Deputy Attorney General, May 17, 1943.— Recently you requested our advice as to whether a licensed osteopathic physician is eligible to serve as a school medical inspector under the provisions of the Pennsylvania School Code.

The School Code of May 18, 1911, P. L. 309, sec. 1501, as last amended by the Act of May 20, 1921, P. L. 939, 24 PS §1501, provides:

"Every school district of the first, second, or third class in this Commonwealth shall annually provide medical inspection of all the pupils of its public schools by proper medical inspectors, to be appointed by the

board of school directors of the district in sufficient number to conduct the required inspection in conformity with the standard requirements prescribed by the Commissioner of Health for the medical inspection of schools in such district. Such medical inspection shall be made in the presence of the parent or guardian of the pupil, when so requested by parent or guardian. *All such medical inspectors shall be physicians legally qualified to practice medicine in this Commonwealth,* who have had at least two years experience in the practice of their profession, and shall be paid such amounts as the boards of school directors may determine: Provided, That nothing in this act shall preclude the appointment of health officers of municipalities as medical inspectors in the school districts of this Commonwealth." (Italics supplied.)

It is obvious that this particular portion of the school laws deals with the appointment of medical inspectors in school districts of the first, second, or third class. The appointment of medical inspectors in school districts of the fourth class is governed by the provision of the School Code of May 18, 1911, P. L. 309, sec. 1503, as last amended by the Act of July 1, 1937, P. L. 2560, 24 PS §1503, which states:

"In every school district of the fourth class in this Commonwealth, the State Department of Health shall provide, in such manner as it may determine, medical inspection for all the pupils in the public schools by proper medical inspectors, to be appointed by the State Commissioner of Health, at the expense of said department. In the event that such department, because of lack of funds, is unable to provide adequate medical inspection at its expense, the school district may, at its own expense, provide such medical inspection or additional medical inspection. *All such medical inspectors shall be legally qualified physicians, who have had not less than two years' experience in the practice of their profession.* Such medical inspection shall be

made in the presence of the parent or guardian of the pupil, when so requested by parent or guardian." (Italics supplied.)

Our problem with your particular inquiry involves an interpretation of the phrases "physicians legally qualified to practice medicine in this Commonwealth" and "legally qualified physicians".

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. VIII, sec. 101(87), 46 PS §601, entitled "Definitions of Words and Phrases", defines the term "physician" as "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in any or in all of its branches". The same section defines an "osteopath" as "an individual licensed under the laws of this Commonwealth to practice osteopathy".

Webster's New International Dictionary, Second Edition, states that a "physician" is "a person skilled in physics of the art of healing". "Medicine" is defined as "the science and art dealing with the prevention, cure or alleviation of disease".

In the case of Commonwealth v. Long, 100 Pa. Superior Ct. 150, 152 (1930), the court, inter alia, stated:

"The law is settled in Pennsylvania that the term 'medicine' as used in the Act of June 3, 1911, P. L. 639, relating to the right to practice medicine and surgery in the Commonwealth of Pennsylvania . . . refers to its broad and comprehensive meaning as the art or science having for its object the cure of diseases and the preservation of health, and that the 'practice of medicine' includes all *practice of the healing art, with or without drugs.*" (Italics supplied.)

The legislative meaning of this latter word (medicine) when used in the expression "practice of medicine", covers and embraces everything that by common understanding is included in the term "healing art".

In Commonwealth v. Seibert, 262 Pa. 345 (1918), the Supreme Court concluded that the practice of

neuropathy was included within the meaning of the practice of medicine as it was a branch of medicine. Similarly, in Commonwealth v. Mollier, 122 Pa. Superior Ct. 373, 375 (1936), the court stated:

" 'The expression "practice of medicine" covers and embraces everything that by common understanding is included in the term healing art.' "

The Supreme Court in Long et al. v. Metzger et al., 301 Pa. 449 (1930), stated that the practice of chiropractic was within the meaning of the legislature when applied to the term "practice of medicine".

The broad general meanings of the terms "medicine and surgery" and "healing art" are emphasized by the definitions contained in the Act of June 3, 1911, P. L. 639, sec. 1, as amended by the Act of August 6, 1941, P. L. 903, 63 PS §401, as follows:

"(c) The term 'medicine and surgery' as used in this act shall mean the art and science having for their object the cure of diseases of, and the preservation of the health of, man, *including all practice of the healing art with or without drugs,* except healing by spiritual means or prayer.

"(d) The term 'healing art' as used in this act shall mean the science of diagnosis and treatment *in any manner whatsoever* of disease or any ailment of the human body." (Italics supplied.)

It is apparent from all of the foregoing that in this Commonwealth our appellate courts have ascribed a very broad and general meaning to the terms "physician" and "practice of medicine". Inasmuch as the courts have ruled that the practice of neuropathy and chiropractic are included within the meaning of the term "practice of medicine" which is synonymous with "everything that by common understanding is included in the term healing arts", we have no hesitation in concluding that a licensed osteopathic physician is a physician who is engaged in the practice of healing arts, which is the practice of medicine.

Our conclusions in this respect are corroborated by the ruling of the Superior Court in the case of Commonwealth v. Cohen, 142 Pa. Superior Ct. 199, 202 (1940), wherein it stated:

"For the purposes of this appeal it is enough to say that the legislature has seen fit to recognize osteopathy as 'a complete and independent scientific system' and in the various acts of assembly, supra, *have given osteopaths the standing of physicians.*" (Italics supplied.)

Again at page 203, the court said:

"Licensed 'osteopathic physicians' are 'licensed physicians' and, as such, are excepted from the prohibition of the Anti-Narcotic Act. As a general term 'licensed physicians' comprehends licensed osteopaths."

We desire to point out in passing that there is no authority for a fourth class school district to provide medical inspection at its own expense, unless your department is unable to furnish adequate medical inspection because of lack of funds: Becker et al. v. School District of Upper Moreland Township et al., 50 Montg. 244.

While the conclusion reached herein is not the conclusion that would be arrived at by the use of the words and phrases herein analyzed in their usual and ordinary acceptation, yet in view of the decisions of the courts of last resort in Pennsylvania it is our opinion and you are accordingly advised that an osteopathic physician, who is licensed as such by the Commonwealth of Pennsylvania, is a "physician qualified to practice medicine" within the meaning and intent of the legislature, and is authorized and qualified to act as a medical inspector in first, second, third, and fourth class school districts. However, a fourth class school district may not employ a medical inspector at its own expense, unless the Department of Health is unable to provide adequate medical inspection because of lack of funds.