# Commonwealth *v.* Read, Appellant.

*Physicians and surgeons—Unlawfully assuming to practice medicine—Evidence.*

In the trial of an indictment charging the defendant with being unlawfully engaged in the practice of medicine and surgery, a conviction will be sustained where the evidence established that the defendant, who was not a licensed physician, examined patients by physical tests, made inquiry of their past condition, examined the pulse and tongue to diagnose the cause of the real or alleged malady, after which he prescribed his special remedy that would afford relief.

It has been uniformly held that where one holds himself out as competent to prescribe, he is engaged in the practice of medicine, notwithstanding that the remedy prescribed by him, and for which alone he assumes to charge, is one of his own inventions or compounding.

Argued December 16, 1920.   Appeal, No. 327, Oct. T., 1920, by defendant, from judgment of Q. S. Phila. County, Aug. Sessions, 1920, No. 503, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Edward Parker Read.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Indictment for practicing medicine and surgery without a license.   Before STERN, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were the charge of the court and refusal of motion for new trial and in arrest of judgment.

*John W. Parks,* for appellant.

*Charles Edwin Fox,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY ORLADY, P. J., March 5, 1921:

The defendant was convicted under an indictment charging him with being unlawfully engaged in the practice of medicine and surgery and holding himself forth as a practitioner of medicine and surgery; assuming the title of doctor of medicine and surgery; unlawfully assuming to diagnose and treat disease by the use of medicine and surgery, without first having received a certificate of licensure from the Bureau of Medical Education, etc., as required by the Act of June 3, 1911.

Stripped of immaterial matters, it is conceded that this defendant for the past thirty years has been conducting a place of business at four different locations on South street, Philadelphia, and vending patent medicines, roots, herbs and mixtures. He advertised in the public press of the city as "Doctor Read, Specialist. Diseases of both Sexes. Cured 32,000 worst cases. No cure, no pay."—and displayed a window sign as follows, "Doctor Read, Expert Optician. Diseases of both Sexes. Advice Free," and "Doctor E. Parker Read, Specialist in Diseases of Both Sexes. Advice Free."

On the witness stand he claimed to have a diploma as a doctor of philosophy, granted by Princeton University, of Princeton, Indiana, which he stated was conferred upon him, in absentia, without submitting a thesis or any special work entitling him to this preferment. He frankly admitted that he is not a graduate of any medical school, and did not have any license to practice medicine in Pennsylvania; that he has received no certificate of licensure from the Bureau of Medical Education and Licensure of said Commonwealth.

He claimed to be a doctor of philosophy, and a judge of a "small cause court" in Center Township, Camden County, New Jersey; that he was the president of

the Cosmopolitan Industrial Educational Institute; the president of the Eureka Sanitation Association; the president of the United Business Incorporating Associated Companies and Societies Mutual; the president of the Protective League, and the originator of the Cosmopolitan Industrial Educational Institute of Lawnside, N. J. He did not present any diploma to warrant his use of these exceptional titles, but utilized them in advertising and conducting his business of manufacturing and vending patent medicines, roots, herbs, tonics, salves and liniments.

Several witnesses were called who testified, without material contradiction, that he investigated his customer or patient by physical tests, made inquiry of their past condition, and examined the pulse and tongue to diagnose the cause of the real or alleged malady, after which he prescribed his special remedy that would afford relief. He professed to be familiar with the cause of the actual or simulated diseases, and declared his ability to cure it.

Under the defendant's admissions it was clearly shown that he not only held himself out as a physician, but actually prescribed for the conditions he diagnosed, and advised that the malady or condition was curable under his treatment.

The material facts that were in dispute were clearly and fairly submitted to the jury in a charge of which the defendant has no reason to complain. The first point submitted being as follows: "Unless the jury find from the evidence produced by the Commonwealth in this case, the defendant engaged in the practice of medicine and surgery, or held himself out as a practitioner of medicine and surgery, or assumed the title of doctor of medicine and surgery, or doctor of any specific disease, or diagnosed diseases or treated diseases by the use of medicine and surgery, your verdict must be 'Not Guilty.'" This was affirmed, and under the evidence embraced every feature, and covered the whole field of the defense.

202, (1921).]      Opinion of the Court.

It has been uniformly held that where one holds himself out as competent to prescribe, he is engaged in the practice of medicine, notwithstanding the remedy prescribed by him, and for which alone he assumes to charge, is one of his own inventions or compounding. State of Kansas v. Joseph Huff, 12 Lawyers Reports Annotated, N. S. page 1094, with notations of many authorities to sustain the conclusion.

In our own State the question has been fully covered in Com. v. Byrd, 64 Pa. Superior Ct. 108, and Com. v. Seibert, 69 Pa. Superior Ct. 271, which was affirmed on an appeal to the Supreme Court, in 262 Pa. 345, in which it is declared, "The manifest and only purpose of the statute was to confine the right to invite public confidence in the skill and efficiency of those who would hold themselves out to the public as medical doctors, to those only who have had an examination by an impartial board of examiners created by the statute and acting for the State, and have been accredited by said board as having met the requirements of the law and received its license. The policy of the law in enforcing such regulation under its police power is not questioned, no more is the wisdom of the enactment. Giving the act this interpretation, the defendant by his conduct brought himself unquestionably within its terms; he engaged in the practice of medicine, that is, he held himself out to the public as one instructed and skilled in the healing art."

The case was fairly tried in the court below, the assignments of error are overruled, and the judgment is affirmed, the record remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal on this case was made a supersedeas.