## Execution of Prescriptions

MOUNTENAY, Assistant Deputy Attorney General, July 3, 1950.—You have requested us to advise you as to the interpretation of section 2 of the Act of July 18, 1935, P. L. 1303, as amended, 35 PS §941, commonly known as the Dangerous Drug Act, and regulations

promulgated thereunder, relating to the sale of hypnotic, analgesic and bodyweight reduction drugs. This section reads, in part, as follows:

"No hypnotic drug or analgesic or bodyweight reduction drug as defined herein, shall be sold at retail or dispensed to any person except upon the written prescription of a duly licensed physician, dentist, or veterinarian, . . ."

You make the following inquiries regarding this provision:

1. May such prescription be written and signed by a physician's secretary or other person authorized by him to do so?

2. May such prescriptions be telephoned by a physician to a pharmacist, then written and signed by the pharmacist?

3. May a physician authorize a pharmacist, by telephone, to refill such prescriptions?

It will be desirable to state at the outset the purpose of this legislation. In requiring that the enumerated drugs be sold or dispensed only upon the written prescription of a duly licensed practitioner the legislature sought to remedy the mischief of the sale or dispensation of these drugs to improper persons or in harmful quantities, in order to protect the public from addiction thereto.[1] This purpose must be borne in mind when interpreting the act. As set forth in section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551:

---

[1] "It is clearly the intent of Act 407, P. L. 1935, to regulate the dispensing of barbital and other hypnotic drugs in such a manner as to prevent their harmful effects. The medical profession appears to be convinced that these drugs have a tendency to become habit-forming and that their continued use results in an addiction which is difficult to overcome. Acute and chronic intoxication frequently results from the lay use of the drugs incorporated in the Act." (Page 22, Rules and Regulations of the Division of Narcotic Control, Department of Health).

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; . . ."

Consequently, we are impelled to construe this act so as to minimize the possibilities of unauthorized use of these drugs.

Section 2, supra, clearly provides that prescriptions for the drugs controlled by the act shall be written by a duly licensed physician, dentist or veterinarian. Could such a person, then, delegate this duty to a lay assistant?

It is a well-settled rule of law that a statutory duty requiring the knowledge or judgment of particular individuals must be exercised by the persons upon whom the duty is conferred. In this regard, the A. L. I. Restatement of the Law of Agency, sec. 17, comment (b) reads:

"Duties or privileges created by statute may be imposed or conferred upon a person to be performed or exercised personally only. Whether a statute is to be so interpreted depends upon whether or not in view of the purposes of the statute, the knowledge, consent, or judgment of the particular individual is required. . . ."

The duty to prepare such prescriptions is imposed by the statute upon persons specially trained and qualified so to do. The duty is one requiring the professional knowledge or judgment of the persons so qualified, and consequently, cannot be delegated to, or exercised by, a layman.

Moreover, the preparing of a prescription by anyone other than a licensed practitioner would constitute the unauthorized practice of medicine. In the case of Com-

monwealth v. Murry, 57 Montg. 376, 379 (1941), it was said:

". . . the courts have held that though a man may manufacture and compound his own medicines, *yet if he prescribes them he is practicing medicine:* Com. v. Read, 76 Pa. Super. 202, 205 (1921) ; Com. v. Byrd, 64 Pa. Super. 108, 114 (1916). . . ." (Italics supplied.)

Such conduct would be squarely within the prohibition of the Medical Practice Act, of June 3, 1911, P. L. 639, as amended, 63 PS §401 et seq., making unlawful the practice of medicine by persons other than those therein designated. These prescriptions, then, must be prepared personally by the physician.

As far as the purely mechanical phase of signing and writing the prescription is concerned, it would at first blush appear that this duty, like any other ministerial duty, could be delegated to an assistant. However, the purpose of the physician's signature on the prescription is to assure the pharmacist of its authenticity. To allow as assistant to sign the prescription would increase the risk of filling spurious prescriptions. Bearing in mind the purpose of the legislature to protect the public, the act must be construed in such a maner as to minimize this hazard. Consequently, the signing of the prescription should be done by the physician himself.

On the other hand, there would seem to be no objection to an assistant's typing or writing the prescription order as dictated by the practitioner, provided the prescription as written is verified by the signature of the physician.

With reference to transmitting the prescription by telephone, the act speaks for itself. The unequivocal statutory requirement that the prescription be written would seem absolutely to prohibit a pharmacist's selling one of the controlled drugs on the sole authority of a telephone conversation. The word "written" cannot be

ignored. As said in Commonwealth v. Mack Bros. Motor Car Company, 359 Pa. 636, 640 (1948)

". . . The legislature cannot, . . . be deemed to intend that language used in a statute shall be superfluous and without import. . . ."

Such a conclusion would likewise bar the practice of telephoning a prescription, then, after the drug has been delivered, confirming the prescription in writing. It is manifest that the legislature believed mere telephonic transmission to be insufficient to assure the authenticity of a prescription; hence the requirement that it be in writing. But if the confirmatory writing were not in the hands of the pharmacist until after the delivery of the drug to the buyer it would be too late to correct any discrepancies between the prescription as filled and the confirmation. Indeed, in cases of illicit procurement of the drug, the confirmation would never be forthcoming. To allow token compliance with the act by a technical expedient such as this would defeat the object which the legislature sought to achieve.

We are not unmindful of the fact that certain exigencies may arise in which the convenience of telephonic transmission would be highly desirable. Nevertheless, only the legislature can make exceptions, and it did not see fit so to do. On the other hand, this conclusion should not be construed to prohibit a pharmacist's compounding a prescription on the authority of a telephone call provided he has the opportunity to examine the written confirmation prior to delivering the drug to the buyer.

As regards telephonic transmission, the same reasoning applies to renewing or refilling a prescription as to filling it initially. Many of the so-called dangerous drugs are habit-forming,[2] and consequently, repeated

---

[2] See footnote 1, supra.

dosages, such as well might arise out of unauthorized renewals, present a particular problem. Accordingly, regulation no. 1, promulgated under the Dangerous Drug Act, requires a new prescription for each refill in excess of the number of refills specifically authorized by the original prescription.[3]

Again, mere telephonic transmission of a renewal would, as in the case of an original prescription, contravene both the language and the intent of the legislature. Reason demands that the same precaution be taken in the case of refills as in the case of original prescriptions. Consequently, whenever regulation no. 1 forbids refills except on a new prescription, such prescription must meet all the requirements of the original, i. e., it must be in writing and in the possession of the pharmacist before he dispenses the drug.

We are, therefore, of the opinion, and you are accordingly advised, that before a pharmacist may lawfully sell or dispense any analgesic, hypnotic or body-weight reduction drug, as defined in the Dangerous Drug Act of July 18, 1935, P. L. 1303, as amended, 35 PS §940 et seq., whether it be by original prescription or by renewal, he must be in actual possession of a written prescription personally prepared and signed by a duly licensed physician, dentist or veterinarian. Such prescription may be written by an assistant provided that it is verified by the signature of the practitioner.

---

[3] "Prescriptions under Act 407, P. L. 1935, cannot be renewed by a pharmacist unless the prescriber, a duly licensed physician, dentist, or veterinarian, endorses on the face of the prescription blank the specific number of times to be renewed, as defined by the opinion of the Attorney General's office, viz.: 'If a prescription calls for a renewal or refill, the pharmacist may refill or renew it the number of times and according to the stipulation specified on the prescription of the practitioner. Otherwise, the pharmacist is limited to filling the prescription once only on presentation.'"