## Commonwealth *v*. Byrd, Appellant.

*Medicine—Illegal practice of—Chiropractic—Act of June 3, 1911, P. L. 639—July 25, 1913, P. L. 1220.*

A person may be convicted of practicing medicine and surgery without a license as required by law, who holds himself out as a "Doctor" under the name of a "Chiropractic" and professes to treat nervous diseases, nerve displacement and nerve impingements by thrust handling and manual treatment, and by pressure and heat.

Argued May 1, 1916. Appeal, No. 138, April T., 1916, by defendant, from judgment of Q. S. Somerset Co., May Sessions, 1915, No. 40, on verdict for plaintiff in case of Commonwealth v. R. L. Byrd. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for practicing medicine without a license in violation of the Acts of June 3, 1911, P. L. 639, and July 25, 1913, P. L. 1220.

The indictment charged that the defendant did wrongfully and unlawfully publicly profess to be a physician

and surgeon, and did publicly profess to cure and heal diseases, nervous disorders, displacements, injuries, and ailments by means of a certain system and treatment having the spine for a base, known as Drugless Therapy and Chiropractic, without having first received a certificate of licensure from the Bureau of Medical Education and Licensure and having such license properly recorded in the office of the superintendent of Public Instruction at Harrisburg, contrary to the form of the act of assembly in such case made and provided and against the peace and dignity of the Commonwealth of Pennsylvania.

The evidence supported the averments of the indictment.

Verdict of guilty upon which the defendant was sentenced to pay a fine of $1 and costs.

*Error assigned* was in entering judgment on the verdict.

*J. A. Berkey,* with him *C. L. Shaver,* for appellant.— Defendant was not practicing medicine or surgery: Com. v. Thompson, 24 Pa. C. C. R. 667; Com. v. Pierce, 10 D. R. 335; Martin v. Baldy, 249 Pa. 253; In re Electropathic Institute, 9 W. N. C. 31; In re First Church of Christ, Scientist, 20 Pa. C. C. R. 241, First Church of Christ, Scientist, 205 Pa. 543.

*Virgil R. Saylor,* for appellee.

OPINION BY ORLADY, P. J., July 18, 1916:

The learned court below overruled motions for a new trial, and in arrest of judgment in an opinion which convincingly answers the argument of the appellant.

The investigation of the question involved, is of special importance, as it affects the general policy of our laws regulating the great systems of medicine and surgery. The reason and necessity for such enactments are well stated in the preamble to the Act of June 3, 1911, P. L.

639, viz: "Whereas, the safety of the citizens of this Commonwealth is endangered by incompetent physicians and surgeons, and a due regard for public health and the preservation of human life demands that none but competent and properly qualified physicians and surgeons shall be permitted to practice their profession." By the first section of the act it is ordered, "that it shall not be lawful for any person in the State of Pennsylvania (1st), to engage in the practice of medicine and surgery, (2d), or to hold himself or herself forth as a practitioner in medicine and surgery, (3d), or to assume the title of doctor of medicine and surgery, (4th), or doctor of any specific disease, (5th), or to diagnose diseases, (6th), or to treat diseases by the use of medicines and surgery, (7th), or to sign any death certificates, (8th), or to hold himself or herself forth as able to do so, excepting those hereinafter exempted, unless he or she has first fulfilled the requirements of this act and received a certificate of licensure from the Bureau of Medical Education and Licensure created by this act."

The material facts in the case are not in dispute; the defendant is not in any exempted class mentioned; and his personal examination on the trial clearly brings him within the prohibitions of this act and its supplement of July 25, 1913, P. L. 1220. For the past seven years he has maintained offices in Somerset, Berlin and Myersdale, in Somerset County, where, on specified days he holds out to the public his notice of professional occupation, by a sign on his office window, viz: "Dr. R. L. Byrd, Chiropractic;" he invites persons suffering from disease to consult him, and promises to relieve them; he treats persons and charges fees therefor to those who come to him in suffering and in physical distress; he defines the abnormal conditions he finds as "nerve displacement, subluxation and impingement," and seeks to mitigate them "by a certain thrust that the chiropractics use to release an impinged nerve and enable it to perform its functions;" he seeks to ascertain the cause of disease by

a physical examination, and to locate the impinged nerve by heat and tenderness tests; he professes to adjust all nervous diseases, "St. Vitus' dance and fifty others"; to treat for typhoid fever and cure it. He recognized the necessity of complying with the requirements of the statute, and applied twice for a license to practice medicine and surgery as required by this law, and failed to pass the examinations or receive a certificate of licensure.

The defense now is, that he does not diagnose or treat disease as such, or practice medicine or surgery as understood by the schools. The methods he applies to ascertain the cause of physical trouble, by manipulations, pressure and heat so as to fix the location of an impinged nerve, and by thrust, handling, and manual treatment relieve the deranged organ, or section of the spinal column, is simply an ingenious play on words, without any substantial difference in meaning, from ordinary diagnosis and treatment of disease. The practice of medicine and surgery, as used by the legislature, is intended to comprehend all the branches of the healing art except where specially mentioned. The line of demarcation between medicine and surgery was never clearly defined, and there is a library of discussion in relation to the subject. The modern thought is universally accepted, that within the realm of the two, is to be found the ascertainment of the cause, and treatment of all physical and mental ills, and the tests required by Section 6, of the Act of 1911, are intended to assure, through careful examinations of applicants for the licenses and to demonstrate the professional qualifications and fitness of the licensed party to "practice medicine and surgery or special branches of medicine and surgery as recognized by the people at large." Expert opinion is not necessary to determine this phase of the question.

In Medico Chirurgical College Petition, 190 Pa. 121, the effect to be credited to the word "medicine" is given as follows: "We take the word medicine in its common signification, which in the beginning included, and yet

with most of us includes all learning, having for its object the care of the health and cure of the ills of the human body." The meaning of the word "surgery," as understood by the masses, is equally comprehensive, and is understood to include the diagnosis, and treatment by instruments, operations.or methods of abnormal physical conditions, whether affecting external or internal parts. The subject-matter in the minds of the legislators in passing the act, was to protect the people from practitioners of medicine and surgery who were without scientific training, and to allow only reputable physicians, from a regular or reputable school to practice medicine and surgery, with an exception in favor of those already long engaged in the practice. Until these acts were passed there were no such stringent requirements established by law for the practice of medicine and surgery in this State, and it cannot be questioned that it was a proper subject for legislative direction. The health and safety of society would be maintained in no other manner. To allow incompetent or unqualified persons to administer, or apply medical agents or to perform surgical operations and treatments, would be highly dangerous to the health as well as the lives of persons who would submit themselves to such practitioners: State v. Mylod, 41 L. R. A. 428; Nelson v. State Board of Health, 22 Ky. 438, 50. A similar question was presented in Eastman v. State Board of Health, 71 Ill., App. 236, in which the court said, "The appellant professes to be able to diagnose and advise in respect to a long list of diseases, and to furnish discriminative and efficient treatment to those who may come to him, and while he may rely wholly on manipulations, flexing, rubbing, extension and etc., yet, he professes to be skilled and have professional judgment in these methods, so as to properly adapt treatment to each case, and with repetition at such times and to such extent as may be dictated by his knowledge and experience." Similar conditions are mentioned in Bragg v. Alabama, 58 L. R. A. 925.

"While the defendant seeks to evade the responsibility of practicing medicine and surgery within the meaning of the act, he advertises himself to the world as a doctor, visits the sick, examines their condition, determines the nature of the disease and prescribes the treatment deemed by him most appropriate to relieve the ills of which his patients complain."

It must be conceded, that no profession requires more careful preparation than by one who holds himself out "as a practitioner, or who assumes the title of doctor, or to diagnose and treat disease." It has to deal with subtle and mysterious influences upon which life and health depend, and requires a knowledge not only of normal health and the complicated relations of the parts of the human body, but as well the scientific training, to properly detect the presence of disease and prescribe appropriate remedies therefor. Reliance must be placed upon the assurance given by the licensing body of his qualifications, his learning and skill,—and on the defendant's own testimony he was attempting to gain the benefits of such a license, without possessing the qualifications fixed by the law.

The intention of the legislature must govern in the construction of penal as well as other statutes. Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them would comprehend: U. S. v. Wiltberger, 5 Wheat. 76; Commonwealth v. Brewing Co., 58 Pa. Superior Ct. 647, s. c. 252 Pa. 168; Commonwealth v. Falk, 59 Pa. Superior Ct. 217.

The settled rule of interpretation announced in the text books and confirmed by judicial decision, is that when the words of the statute are not explicit, the intention is to be collected from the context, from the oc-

casion and necessity of the law, from the misconduct felt and the object and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion: Oxford Coal Co. v. Fidelity & Casualty Co., 248 Pa. 311.

The literature of the profession, as well as the speech of the common people understand the practice of medi. cine and surgery to include the investigation of causes of disease, and by the use of medicines and drugs, instruments and appliances, to cure, mitigate and alleviate bodily disease and physical derangements. There never has been, and cannot be a complete separation between the practice of medicine and surgery, as they have been practiced and understood by the most learned in the profession. The principles of both are the same throughout and no one is fully qualified to practice either, who does not understand the fundamental principles of both: 6 Hun 633, Bouvier's L. Dict.

The statutory requirements of recent years have been deemed necessary to protect the public from imposition and fraudulent practices; and have resulted in subdivisions into departments, by pretentious specialists, so as to evade the statutory requirements of general professional qualifications. New and coined words are used to represent a particular branch of medicine or surgery, or a departure from recognized methods and practices. In most instances they are deceptive and artful devices to impose on the public and increase the necessity for statutory regulation.

The legislative intention is clear, and when one advertises to the world that he is practicing a professional occupation, through the well known title of "Doctor"; claiming to be a graduate of a school or college; seeking patients and charging fees for professional services; there can be but one inducement moving him, viz, to have the public believe he is skilled and experienced in relieving disordered or abnormal conditions. It is to prevent incompetent practitioners and charlatans from

imposing on a credulous public by such a holding out, that these acts were passed—and from defendant's own testimony, he has clearly violated the provisions of the law.

This question has been fully considered by the courts of other states, under similar statutes, and all support the conclusion reached by the court below.     See Bragg v. State, 134 Ala. 58, L. R. A. 295; People v. Allcutt, 102 N. Y. Suppl. 678, 117 App. Div. 546; State v. Miller, (Iowa), 124 N. W. 167; Commonwealth v. Zimmerman (Mass.), 108 N. E. 893, in which this particular question is carefully reviewed.

The judgment is affirmed, the record remitted to the court below that the sentence imposed shall be executed.

HENDERSON, J., dissents.