# Commonwealth *v.* Seibert, Appellant.

*Physicians and surgeons—Neuropathy—Act of June 3, 1911. P.
L. 639—Practicing neuropathy without a license.*

1. Under the Act of June 3, 1911, P. L. 639, as amended by the
Act of July 25, 1913, P. L. 1220, relating to the licensing of physi-
cians and surgeons, a person who holds himself out to the public
as one instructed and skilled in the healing art is required to have
a license.

2. A person who practices neuropathy, which is the science of
healing by controlling the blood supply to the diseased parts of
the human body, through manipulation around or about the af-
fected or diseased parts, practices medicine within the meaning of
the said Acts of 1911 and 1913, and is properly convicted of a vio-
lation of the Acts of 1911 and 1913, if he practices his profession
without first obtaining a license.

3. There is no merit in the contention that the Acts of 1911 and
1913 are unconstitutional.

Argued May 7, 1918. Appeal, No. 14, Jan. T., 1919, by
defendant, from judgment of Superior Court, Oct. T.,
1917, No. 329, affirming sentence of Q. S. Philadelphia
Co., Nov. Ses., 1916, No. 452, on verdict of guilty, in case
of Commonwealth of Pennsylvania v. John A. Seibert.
Before Brown, C. J., Stewart, Moschzisker, Frazer
and Walling, JJ. Affirmed.

Appeal from Superior Court. Before Martin, P. J.
See 69 Pa. Superior Ct. 271.

The opinion of the Supreme Court states the facts.

The Superior Court affirmed the sentence of the Court
of Quarter Sessions. Defendant appealed.

*Error assigned* was the judgment of the Superior
Court.

*Thomas S. Lanard,* for appellant.—The practice of
neuropathy is not the practice of medicine or surgery
within the meaning of the Act of June 3, 1911, P. L. 639,
as amended by the Act of July 25, 1913, P. L. 1220.

The practice of neuropathy is a science distinct from that of medicine and surgery: Nelson v. State Board of Health, 50 L. R. A. 383; State v. Liffring, 46 L. R. A. 334; Hayden v. State of Miss., 81 Miss. 291; State v. Herring, 70 N. J. Law 34; Commonwealth v. Thompson, 10 D. R. 634; Commonwealth v. Pierce, 10 D. R. 335; North Carolina v. McKnight, 131 N. C. 717; Martin v. Baldy, 249 Pa. 253.

*Joseph H. Taulane,* with him *Samuel P. Rotan,* for appellee.—The defendant was practicing medicine within the meaning of the statute: Com. v. Zimmerman, 221 Mass. 184, 188; Swarts v. Siveny, 35 R. I. 1, 7; Com. v. Jewelle, 199 Mass. 558; People v. Allcutt, 117 Appellate Div. (N. Y.) 546, 549; Board of Medical Examiners of Utah v. Freenor, 154 Pacific Rep. 941, 946; Com. v. Byrd, 64 Pa. Superior Ct. 108.

OPINION BY MR. JUSTICE STEWART, October 7, 1918:

The appellant is under conviction and sentence in the Court of Quarter Sessions of Philadelphia County, November Term, 1916, under a bill of indictment charging that within the jurisdiction of the court and at the times specified he did then and there unlawfully engage in the practice of medicine and surgery, publicly professing to cure and heal diseases, nervous disorders, displacements, injuries and ailments by means of a certain system and treatment known as neuropathy, without first having received a certificate of licensure from the Bureau of Medical Education and Licensure, contrary to the act of assembly in such case made and provided. Appeal was taken from the judgment so rendered to the Superior Court, complaining of numerous errors alleged to have been committed in the court below. The appeal there was dismissed and the present appeal is from the judgment of the Superior Court. We shall not undertake to consider separately the numerous errors assigned inasmuch as the case presents but two questions and the

assignments are all comprehended within one or other of these. It was claimed by the Commonwealth on the trial of the case that the above series of acts offends against the first section of the Statute of 3 June, 1911, P. L. 639, which provides as follows:

"That on and after January first, nineteen hundred and twelve it shall not be lawful for any person in the State of Pennsylvania to engage in the practice of medicine and surgery, or to hold himself or herself forth as a practitioner in medicine or surgery, or doctor of any specific disease, or to diagnose diseases, or to treat diseases by the use of medicines and surgery, or to sign a death certificate, or to hold himself or herself forth as able to do so, excepting those hereinafter exempted, unless he or she had first fulfilled the requirements of this act and has received a certificate of licensure from the Bureau of Medical Education and Licensure created by this act, which license shall be properly recorded in the office of the Superintendent of Public Instruction at Harrisburg."

Taking the facts with respect to appellant's line of conduct to be just as disclosed by the evidence adduced by the Commonwealth—and it may be here observed that no attempt was made on the trial nor here to controvert the correctness of any of them,—the first question that arises is: do these facts show a violation of the provisions of the Act of 3 June, 1911, P. L. 639, above quoted? and second, is the act in question a constitutional exercise of legislative power? The issues are thus stated and argued in appellant's brief as submitted: (a) is the practice of neuropathy, the practice of medicine? (b) is it the practice of a branch of medicine? (c) or a separate science? and second, is the Act of 1911, as amended, constitutional so far as it relates to neuropathy? Appellant's line of conduct embraced the following acts, as stated with entire correctness in appellant's history of the case; the defendant, a resident of the City of Philadelphia, had there engaged in the treatment of persons

by a system known as neuropathy, admittedly, "a science of the healing art by which all diseased conditions of each and every part of the body are restored to health by regulating the blood supply to the involved areas through the nerve mechanism"; in front of his office there was a sign, "Dr. J. A. Seibert, Neuropath"; he was a graduate of the American College of Neuropathy; at his office he met patients; the treatment they received was that of manipulation around or about affected parts of the body, no drugs or medicine being used, and for each treatment a fee was paid; he had no certificate or license from the Bureau of Medical Education and Licensure. The information charging him with practicing medicine without license, etc., was made by the president of the Bureau of Medical Education. The specific transgressions of the statute complained of were that the defendant, being an unlicensed person, (1) had engaged in the practice of medicine and surgery; (2) that he assumed the title of doctor of medicine and surgery; (3) and held himself forth as a practioner in medicine and surgery, doctor of a specific disease or of specific diseases, qualified to diagnose diseases. The determination of the several inquiries raised must depend on the proper understanding to be derived from the words of the statute involved. Of controlling importance in this connection is the word "medicine," a word susceptible of distinct meanings; one indicating nothing more than a remedial agent that has the property of curing or mitigating diseases or is used for that purpose, while the other indicates an art of healing or science which has for its province the treatment of diseases generally. The latter has much the wider and more comprehensive significance of course; and while, as so used, it may be in a sense technical, yet, unquestionably the wider is the popular sense in which it is employed and understood. Furthermore, whatever is technical in it has been so far popularized by common usage and understanding that no one, however unlearned, can fail to observe the true

distinction between medicine as a drug and medicine as a science or profession. It is in the latter sense that the word is employed in the statute. Manifestly to construe it otherwise would be to defeat the object and purpose of the legislation. The legislative purpose with respect to it is expressed in the preamble to the act, as follows, "Whereas, The safety of the citizens of this Commonwealth is endangered by incompetent physicians and surgeons, and a due regard for public health and the preservation of human life demands that none but competent and properly qualified physicians and surgeons shall be permitted to practice their profession." The one danger provided against was not the promiscuous sale of drugs or other remedial agents but the unrestricted and unregulated practice of medicine or the art of healing, medicine here being used to denote an art or science having for its object the cure of diseases and the preservation of health, whether with aid of drugs or any other remedial agencies whatever. The manifest and only purpose of the statute was to confine the right to invite public confidence in the skill and efficiency of those who would hold themselves out to the public as medical doctors, to those only who have had an examination by an impartial board of examiners created by the statute and acting for the State, and have been accredited by said board as having met the requirements of the law and received its license. The policy of the law in enforcing such regulation under its police power is not questioned; no more is the wisdom of the enactment. Giving the act this interpretation, the defendant by his conduct brought himself unquestionably within its terms; he engaged in the practice of medicine, that is, he held himself out to the public as one instructed and skilled in the healing art. By printed sign exposed in front of the office, styling himself Dr. J. A. Seibert, Neuropath, he represented himself as skilled in the healing art and invited the confidence and patronage of the sick and afflicted generally. The distinction that is sought to be made between neurop-

athy and medicine can avail the defendant nothing if we keep in mind that the legislative meaning of the latter word, when used in the expression "practice of medicine," covers and embraces everything that by common understanding is included in the term healing art. The defendant held himself out to the public and invited its confidence and patronage as a "practitioner of neuropathy." The use of this term necessarily implied that he was skilled in the science of pathology, a science unquestionably which has for its province "the treatment of diseases, their nature, causes, progress, manifestations, and results," Webster's International. This to the lay mind, no less than the professional, would import that neuropathy was a branch of medicine. What more could be said of allopathy, homeopathy, or any other science of healing with such termination as its adopted designation? The terminology, in neither instance, indicates to the general public what remedial agents are employed by those practicing the particular science, nothing beyond the fact that whatever else it might mean, it does certainly mean that the art or science practiced in this instance has for its object the cure of diseases and the preservation of health. To assume that it is not such science is to classify the practice of it with empiricism. It was not pretended that defendant violated the statute by healing diseases by the use of medicine, that is, drugs, but it was specifically charged against him that without a license he had held himself forth as a practitioner in medicine and surgery. It was of this offense he was convicted, and properly so, upon the evidence adduced.

The other question raised is as to the constitutionality of the statute. The same question was raised in the case of In re Registration of Campbell, 197 Pa. 581, where the earlier Act of 18 May, 1893, supplied by the present act, was involved. An examination will show that, so far as the present objections are urged as to the constitutionality of the act under which the defendant was convicted,

the distinction between the two acts shows an intention in the later to even more pronouncedly conform to all constitutional requirements than is observable in the earlier, and yet the objections that were there urged—the same as for the most part as here—were overruled. It is unnecessary to add anything to the opinion of Mr. Justice MITCHELL upholding the constitutionality of the act in that case. As to the other and minor objections we need only say that we find them without merit. We are of the opinion that defendant was accorded every legal right he was entitled to and we see no reason to reverse the action of the court. The judgment of the Superior Court is accordingly affirmed and the appeal is dismissed.