424 A.2d 1355

**Doris L. STRUNACK, Appellant,**

v.

**Clair K. ECKER and Guido Robert Ecker.**

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed Jan. 23, 1981.

Petition for Allowance of Appeal Granted May 26, 1981.

David S. Shrager, Philadelphia, for appellant.

Dean B. Stewart Jr., Norristown, for appellees.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICKERSHAM, JJ.

HESTER, Judge:

This is an appeal from an order granting appellees' motion to strike appellant's complaint.

Appellant instituted an action in trespass to recover damages for injuries sustained as a result of a collision between the automobile she was operating and appellees' vehicle. Medical expenses in the amount of $1,162.75 were alleged.

Appellees filed a motion to strike the complaint asserting that the appellant had failed to meet the $750 medical expense threshold of the "Pennsylvania No-Fault Motor Vehicle Insurance Act", 1974 July 19, P.L. 489, No. 176 Art. I et seq., 40 P.S. § 1009.101, as amended (herein the "Act") in that $756.00 of appellant's medical expense was as a result of chiropractic services.

The motion to strike was granted and this appeal followed.

We are presented with the question as to whether § 301(a)(5)(B) of the "Act" should be construed to include chiropractic expenses.

Section 301(a)(5)(B) provides as follows:

Article III—Tort Liability

(a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

. . . . . . .

(5) A person remains liable for damages for non-economic detriment if the accident results in:

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars (750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth. (At 40 P.S. § 1009.-301).

We have previously affirmed two lower court decisions wherein they excluded chiropractic expenses from section B (above). *Miller v. Johnson*, 276 Pa.Super. 638, 424 A.2d 548 (1979); *Babcock v. Tippett*, 260 Pa.Super. 583, 394 A.2d 607 (1978).

In determining the meaning of statutory language, our purpose is to ascertain and effectuate the intention of the Legislature. *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979).

In section 301(a)(5)(B), the Legislature enumerated two classes of expenses which can be sued for if in excess of $750.00, "medical and dental services".

Clearly the maxim "expressio unius est exclusio alterius" would seem to apply here. The maxim essentially provides that where certain things are specifically designated, all omissions should be understood as exclusions. *Commonwealth v. Charles*, 270 Pa.Super. 280, 411 A.2d 527 (1979). Thus here, where the statute specified two classes of expenses and "chiropractic" expenses were not included, logically one should conclude that the Legislature did not intend that chiropractic expenses be included in calculating the $750.00 threshold of the Act.

Indeed, our interpretation that the Legislature intended to exclude chiropractic expenses because they were not specifi-

cally enumerated in the Act, is supported when the history of the Act is examined.

Intense debate proceeded the enactment of the No-Fault Act. During the course of this, Senator Edward P. Zemprelli proposed an amendment that would have eliminated the term "dental" and replaced it with "dental, osteopathic, *chiropractic*, physical therapy and pharmaceutical," 2190 Legislative Journal, Senate (July 11, 1974). However, this amendment was defeated. Thus it is an inescapable conclusion that the Legislature did not intend to include chiropractic expenses within this section of the Act.

Surely when one is seeking to determine whether a specific "term" should be construed to be within the language of a particular statute, no clearer indication of legislative intent exists than the specific rejection by the Legislature of an amendment which includes that particular "term".

Appellant points to other statutes, i. e., Workmen's Compensation Act, Act of 1915, June 2, P.L. 736, 77 P.S. § 1, as amended, and the "Chiropractic Registration Act", Act of 1951, Aug. 10, P.L. 1182 § 1, 63 P.S. § 601 et seq., as amended, whose definition of "chiropractic services" and "medical services" would seem to merit the inclusion of chiropractic expenses within § 301(a)(5)(B) of the "Act".

However, we need look no further than the clearly demonstrated intention of the Legislature as expressed during the passage of the "Act".

We resist the temptation to "judicially" legislate under the guise of statutory interpretation. Irrespective of our personal inclinations, *our duty* is to see that the Legislature's intention is correctly implemented. This duty is best expressed by the ancient maxim, "Jus dicere et non jus dare" (to declare the law, not to make it).

Since the position of the appellant was specifically rejected by the Legislature, we see no course but to affirm.

SPAETH, J., files a dissenting opinion in which CERCONE, President Judge, and BROSKY, J. join.

SPAETH, Judge, dissenting:

In deciding that the expense of chiropractic services may not be counted toward the $750 threshold provided in the No-Fault Motor Vehicle Act, 40 P.S. § 1009.301(a)(5)(B), the majority cites the maxim "expressio unius est exclusio alterius." The maxim is beside the point. The issue in this case is not whether we should *add* the word "chiropractic" to the words "medical and dental;" it is rather whether the term "medical services" should be construed to *include* chiropractic services.

I am persuaded that the term "medical services" as used in section 301(a)(5)(B) should be construed to include chiropractic services.

The Statutory Construction Act defines "Medicine and surgery" as:

> The art and science having for their object the cure of diseases of and the preservation of the health of man, including all practice of the healing art with or without drugs, except healing by spiritual means or prayer. 1 Pa.C.S.A. § 1991 (Purdon's Supp. 1964–1978).

and "Healing art" as:

> The science of diagnosis and treatment *in any manner whatsoever* of disease or any ailment of the human body. 1 Pa.C.S.A. § 1991 (Purdon's Supp. 1964–1978) (emphasis added).

We may fairly assume that the legislature was aware of these definitions when drafting the No-Fault Motor Vehicle Act.[1] Moreover, the legislature has previously considered chiropractic services as a form of the healing arts. In the Chiropractic Registration Act of 1951, 63 P.S. § 601 (Purdon's 1968), the legislature defined "Chiropractic" as a

> limited science of the healing arts dealing with the relationship between the articulations of the vertebral column,

---

1. The preface to the section of the Statutory Construction Act that defines "Medicine and surgery" and "Healing art" states that the definitions apply to any statute "finally enacted on or after Sept. 1, 1937, unless the context clearly indicates otherwise." 1 Pa.C.S.A. § 1991 (Purdon's Supp. 1964–1978).

as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health. 63 P.S. § 602(b) (Purdon's 1968).

In the Workmen's Compensation Act, 77 P.S. § 531 (Purdon's Supp. 1979–80), the legislature provided for payment by the employer of "reasonable surgical and medical services, services provided by duly licensed practitioners of the healing arts, medicines, and supplies." This provision has been interpreted as requiring employers to pay for chiropractic services. *Workmen's Comp. App. Bd. v. Overmyer Mold*, 473 Pa. 369, 374 A.2d 689 (1977).

In addition to these statutory definitions, a line of cases interprets the Medical Practice Act of June 3, 1911, 63 P.S. § 401 (Purdon's 1968), *repealed*, 63 P.S. § 421.1 (Purdon's Supp. 1979–1980), as requiring that chiropractors be licensed by the Board of Medical Education and Licensure, notwithstanding the lack of any specific statutory language to that effect. In *Long v. Metzger*, 301 Pa. 449, 453, 152 A. 572, 573 (1930), the Supreme Court defined the "practice of medicine," which is the term found in the licensing statute, as including "everything that by common understanding is included in the term healing art" (citing *Commonwealth v. Seibert*, 262 Pa. 345, 105 A. 507 (1918)). *See also Commonwealth v. Jobe,* 91 Pa.Super. 110 (1927); *Commonwealth v. Martindell*, 82 Pa.Super. 417 (1923); *Commonwealth v. Byrd*, 64 Pa.Super. 108 (1916). Since the chiropractors in *Long* acknowledged that their profession was a healing one, the Court concluded that they had to be licensed to practice.

Appellees do correctly note in their brief, at 8, that the Medical Practice Act of 1974, 63 P.S. § 421.17(a)(4), specifically excludes chiropractic from its scope. This, however, is indicative only of the narrow focus of that Act on doctors of medicine. Thus Section 421.17(a)(6) similarly excludes osteopathy, which is regulated by the Act of March 19, 1909, 63 P.S. § 261 *et seq.*

Perhaps the most compelling argument for construing Section 301(a)(5)(B) to include chiropractic services is the

structure of the No-Fault Motor Vehicle Act itself. Section 103 of the Act defines the term "Medical and vocational rehabilitation services" in language broad enough to include chiropractic services. This broad definition of "Medical and vocational rehabilitation services" is central to the functioning of the Act because it is incorporated in Article II of the Act, which creates the victim's right to recover "basic loss benefits." [2] To be sure, one might say that the definition of "Medical and vocational rehabilitation services" in Section 103 should not influence our construction of the term "medical and dental services" in Section 301(a)(5)(B), because the latter provision has a narrower purpose, namely, to define which victims may sue for non-economic loss.[3] However, if the legislature intended "medical services" to have a broad meaning in Section 103 and a narrow meaning in Section 301(a)(5)(B), one would expect that in drafting Section 301(a)(5)(B), it would have chosen a different term than "medical services." The fact that the legislature used the term in both sections implies that it meant the term to have the same meaning in both sections. In addition, to hold, as the majority does, that "chiropractic services" are not included in "medical services" within Section 301(a)(5)(B), may require a ruling in some later case that chiropractic services are not included in "Medical services" within the Section 103 definition. Such a result might be found inconsistent with considerations of public policy,[4] and yet it might be the only

2. 40 P.S. § 1009.202(a) (Purdon's Supp. 1979–1980).

3. This suggestion is made in the Pennsylvania Bar Institute's book on the No-Fault Insurance Act. *See* PBI, *Pennsylvania No-Fault Motor Vehicle Insurance Act—Practice Under the Act 94* (1975).

4. A remedial statute should be liberally construed. Moreover, it is difficult to think of a reason why the victim of an industrial accident should be allowed to recover the cost of chiropractic services in a workmen's compensation claim, while the victim of a motor vehicle accident should not be. The philosophy underlying workmen's compensation legislation is in essence the same as that underlying no-fault legislation: both types of legislation are designed to provide compensation on the basis of personal need and without regard to personal fault.

way to read the statute in an internally consistent manner.[5]

The majority relies heavily on the defeat of Senator Zemprelli's proposed amendment to the No-Fault Act. 283 Pa.Super. at 591, 424 A.2d at 1357. However, it is always at best a tricky business to imply an intention from a failure to do something. If I don't take my umbrella, does that imply that I don't think it will rain? That I don't care? Or that I forgot to take it? Senator Zemprelli also proposed to refer specifically to "osteopathic" services. Having found an implied intent to exclude "chiropractic services" (because of a refusal to refer specifically to such services), the majority should also find an implied intent to exclude "osteopathic services" (because of a refusal to refer specifically to such services). Such a finding, however, would be quite clearly wrong, for the Statutory Construction Act, 1 Pa.C.S.A. § 1991 (Purdon's Supp. 1964–1978), defines an osteopath as a physician.[6] Thus osteopathic services should be included within the term "medical services," in Section 301(a)(5)(B). I suggest that the legislature rejected Senator Zemprelli's proposed amendment simply because it thought the amendment unnecessary, an opinion supported by the broad language of Section 103 of the No-Fault Motor Vehicle Act, which provides:

"Medical and vocational rehabilitation services" means services necessary to reduce disability and to restore the

5. It is a fundamental precept of statutory construction that the several provisions of a statute should be read so as to be consistent with one another. See Statutory Construction Act, 1 Pa.C.S.A. § 1922(1)(2) (Purdon's Supp. 1964–1978); Pennsylvania Public Utility Commission v. Commonwealth, 23 Pa.Cmwlth. 566, 353 A.2d 887 (1976).

6. Section 1991 provides:
"Physician."

(3) when used in any statute finally enacted on or after June 15, 1957, an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in all of its branches within the scope of the act of June 3, 1911 (P.L. 639) relating to medicine and surgery and its amendments, or in the practice of osteopathy or osteopathic surgery within the scope of the act of March 19, 1909 (No. 29) and its amendments.

physical, psychological, social, and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. A basic loss obligor is not obligated to provide basic loss benefits for allowable expense for medical and vocational rehabilitation services unless the facility in which or through which such services are provided has been accredited by the Department of Health, the equivalent governmental agency responsible for health programs, or the accrediting designee of such department or agency of the state in which such services are provided, as being in accordance with applicable requirements and regulations.

The majority notes that we have affirmed two lower court decisions that excluded the expense of chiropractic services from the $750 threshold. *Miller v. Johnson*, 276 Pa.Super. 638, 424 A.2d 548 (1979); *Babcock v. Tippett*, 260 Pa.Super. 583, 394 A.2d 607 (1978). These cases are entitled to no precedential weight. The *per curiam* opinion in *Miller* contains no discussion, and cites only *Babcock*. *Babcock* was a *per curiam* decision made without any opinion being filed (as may be seen by referring to its citation above). In other words, both *Miller* and *Babcock* are naked—unexplained—statements that chiropractic services do not qualify as "medical services." Of course we should respect the principle of *stare decisis*. "*Stare decisis*," however, means, "To abide by, or adhere to, *decided* cases." Black's Law Dictionary 1577 (4th ed. rev. 1968) (emphasis added). In *Struthers v. Dunkirk, Inc. Ry. Co.*, 87 Pa. 282, 286 (1878), our Supreme Court emphasized that the doctrine of *stare decisis* is to uphold the authority of cases "solemnly decided." Similarly, in *State v. Mellenberger*, 163 Or. 233, 95 P.2d 709 (1939), the

Supreme Court of Oregon emphasized that the doctrine recognizes as authority " '[a] deliberate or solemn decision.' " *And see Commonwealth v. Riggins*, 232 Pa.Super. 32, 48–49, 232 A.2d 521, 529–530 (1974) (dissenting opinion by SPAETH, J., collecting authority, on the necessity of a reasoned opinion as essential to a rational system of criminal justice). There is nothing solemn or deliberate or reasoned about either *Miller* or *Babcock* ; they merely proclaim a *sic volo, sic iubeo,* and we should pay them no heed.

Accordingly, given the past history of the definition of "chiropractic" in this Commonwealth and the structure and broad remedial purpose of the No-Fault Act, I believe that chiropractic expenses should be includable in the $750 threshold. The order of the lower court should be reversed.

CERCONE, President Judge, and BROSKY, J., join in this dissenting opinion.