524 A.2d 498

**Sharon WEBER, Appellant,**

**v.**

**Carolyn WEBER and Robert Weber, Appellees.**

Superior Court of Pennsylvania.

Argued July 17, 1986.

Filed Feb. 17, 1987.

Reargument Denied May 1, 1987.

Petition for Allowance of Appeal Granted Sept. 9, 1987.

Eileen D. Yacknin, Pittsburgh, for appellant.

Louis Vaira, Pittsburgh, for appellees.

Before BROSKY, MONTGOMERY and HESTER, JJ.

MONTGOMERY, Judge:

This appeal is from an order granting summary judgment and dismissing appellant's complaint for partial custody of Jennifer Weber, appellant's sister and appellees' minor daughter. For the reasons that follow, we affirm.

■ Appellees Carolyn and Robert Weber are the parents of both appellant Sharon Weber and Jennifer Weber, who is still a minor. Jennifer resides with her parents. Sharon is an adult who is unmarried and resides with an unmarried man in a residence separate from her parents and sister. Because Mrs. Weber does not approve of Sharon's living arrangements, she refused to permit Jennifer to visit with

Sharon at Sharon's residence or other places outside the parents' home. Sharon therefore filed a complaint seeking partial custody of Jennifer. Appellees filed a motion for summary judgment, asserting that Sharon had not stated a cause of action. The trial court agreed and granted the motion, dismissing Sharon's complaint. We agree that, absent statutory authority, an adult sister does not have standing to bring an action for partial custody of a minor child over the objections of the minor child's parents.

The issue in this case is not simply whether Sharon and Jennifer should be permitted to visit with one another. Rather, the issue encompasses the more difficult question of whether and to what extent the courts can interfere in a decision made by parents of a minor child regarding who that child may associate with.

The right to raise one's children has long been recognized as one of our basic civil rights. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *In re Rinker,* 180 Pa.Super. 143, 117 A.2d 780 (1955). Freedom of personal choice in matters of family life, and the concomitant freedom from unwarranted governmental intrusion, is a fundamental liberty interest protected by the Fourteenth Amendment. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). For these reasons, governmental intrusion into the family is warranted only in exceptional circumstances. The statutory bases for court interference with the parents' right to custody are limited and specific, reflecting that philosophy. *See,* 11 P.S. § 2208 (taking an abused child into protective custody); 23 P.S. § 301 (custody and visitation rights between parents in a divorce action); 23 Pa.C.S. § 2511 (involuntary termination of parental rights); 23 Pa.C.S. § 5311–5313 (grandparents visitation); 42 Pa.C.S. § 6351, 6352 (disposition of dependent and delinquent children).

Appellant concedes that this case does not fall within any of the statutory bases for jurisdiction. Further, appellant does not challenge the fitness of appellees as custodians of

Jennifer.[1] Rather, she questions the wisdom of their decision not to expose Jennifer to a life style of which they disapprove. Whether this is a wise decision or not is irrelevant; the point is that it is their decision and they have a right to make it.

In a similar case, this court held that grandparents do not have standing to seek visitation or partial custody, over the parents' objection, unless they come within the purview of the Grandparents' Visitation Act. *Herron v. Seizak,* 321 Pa.Super. 466, 468 A.2d 803 (1983). In that case, too, the issue was not whether the parents had made a wise decision but whether the court had the power to overrule the parents' decision, absent statutory authority.[2] In that case, the court noted that neither case nor statutory law "legitimizes such an intrusion by the courts into family life." *Id.,* 321 Pa.Superior Ct. at 470, 468 A.2d 805. Since the grandparents had not made any "allegation that would justify an interference with [the parents'] decision not to permit visitation" the court refused to "intervene in this family matter in which no legal rights are at issue." *Id.* We believe that analysis to be appropriate to this case as well. Finding that appellant has not alleged a right to court intervention into this family matter, we affirm the order dismissing appellant's petition.

BROSKY, J., files a concurring opinion.

1. Appellant's brief mentions the possible abuse of Jennifer by an older brother. We do not believe this issue is relevant to the determination of whether Sharon has standing to bring a partial custody action. If Sharon believes Jennifer to be in danger of abuse, she has the right, if not the duty to report same to the appropriate authorities and/or file a dependency petition in juvenile court. 11 P.S. § 2005; 42 Pa.C.S. § 6334.

2. We have been unable to discover any Pennsylvania cases where visitation or partial custody actions have been entertained absent (1) a divorce or separation, (2) the death of one of the natural parents who would ordinarily have protected the petitioner's visitation privileges, (3) a delinquency or dependency proceeding, or (4) a situation where the petitioner had physical custody whether through court order or informally. The New Jersey case relied on by appellant involved a situation where the natural mother, who might have been expected to preserve the sister's visitation privileges, was deceased. *L. v. G.,* 203 N.J.Super. 385, 497 A.2d 215 (1985).

BROSKY, Judge, concurring:

Because of the current state of the law, I am constrained to concur in the result reached by the majority. I write separately, however, because I feel that this is an area to be more fully examined and acted upon by the legislature of this Commonwealth.

I am of the opinion that siblings have a right to visit with one another, in certain circumstances, if it is considered to be in the best interest of the child or children involved. The importance of sibling relationships has been well recognized by the courts. In *Albright v. Com. ex rel. Fetters*, 491 Pa. 320 at 325, 421 A.2d 157 at 160 (1980) our Supreme Court stated that, "It has always been a strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible." In *In re Davis*, 502 Pa. 110, 124, 465 A.2d 614, 621 (1983) the Supreme Court of Pennsylvania reaffirmed this when it echoed the "well founded policy that brothers and sisters should be raised together in one household." The most definitive statement of this policy, comes from the New Jersey Superior Court. In *L. v. G.* 203 N.J.Super. 385, 497 A.2d 215 at 222 (1985), a case similar to the one at bar, the court held that:

> ... this Court finds that the relationship between a child and his/her siblings is a significant and unique one, from which a myriad of benefits and experiences may be derived. The bonds which develop between brothers and sisters are strong ones, and are, in most cases, irreplaceable ... Therefore, this Court finds that siblings possess the natural, inherent and inalienable right to visit with each other. This right is, of course, subject to the requirement that such visitation be in the best interest of the minor child, for it is that which is of paramount concern to this Court.

I agree with this holding.

The relationships between siblings should be closely guarded and nurtured, since it is those relationships that will provide a harbor from which a child may find her way

through the often turbulent waters of life. While it is true that parents may serve this function as well, we must realize that more often than not, parents predecease their children, creating the situation where siblings must comfort, support and depend upon each other. Even in less drastic circumstances, because siblings are closer in age and have shared life experiences, it would be quite natural for them to seek each other's counsel and companionship on routine matters as well.

By forcing Sharon and Jennifer to remain apart there may be more harm done to Jennifer than merely depriving her of a potential supportive relationship. If there already exists a deeprooted bond between the sisters, severing it may cause Jennifer to suffer a deep sense of loss and undermine her sense of security and stability.[1]

Both the trial court and the majority here, rely upon this court's decision in *Herron v. Seizak*, 321 Pa.Super. 466, 468 A.2d 803 (1983) in concluding that appellant has no right to seek partial custody of her minor sibling. Their reliance upon that holding is unfounded for it deals with a different set of circumstances since it involves grandparents and an interpretation of the Grandparent's Visitation Act.

In *Herron* this court denied grandparents the right to sue for visitation of their grandchild under the Custody and Grandparents Visitation Act, 23 P.S. § 1001 et seq. because appellants had failed to meet the criteria set forth in the statute required to qualify them for a cause of action under that Act.

In the case sub judice, no relevant statutory constriction exists. In the absence of this we must look to the common law. The courts of this state have, in the past, recognized the rights of non-parents to sue for custody of a minor child, *Commonwealth ex rel. Williams v. Miller*, 254 Pa. Super. 227, 385 A.2d 992 (1978) and *Commonwealth ex rel. Zaffarano v. Genaro*, 500 Pa. 256, 455 A.2d 1180 (1983) and

---

1. "Access to Children: Towards a Model Statute for Third Parties." 15 Family Law Quarterly 165 (1982), pg. 191 Zaharoff.

"visitation is correlative to custody", *Williams*, supra, 254 Pa.Superior Ct. at 230, 385 A.2d at 994.

In view of the line drawn between custody and visitation, we should discuss the difference between the three types of custodial arrangements in Pennsylvania: custody; partial custody; and visitation. Under the Revised Uniform Reciprocal Enforcement of Support Act (1968), 23 Pa.C.S.A. § 5302 the following definitions are used:

**"Legal custody."** The legal right to make major decisions affecting the best interest of a minor child, including, but not limited to, medical, religious and educational decisions.

**"Partial custody."** The right to take possession of a child away from the custodial parent for a certain period of time.

**"Visitation."** The right to visit a child. The term does not include the right to remove a child from the custodial parent's control.

These distinctions were noted by our Supreme Court in *Commonwealth ex rel. Zaffarano v. Genaro*, supra, 500 Pa. at 259–260, 455 A.2d at 1182:

The distinguishing elements of these arrangements are "[t]he length of existing visits, the frequency with which they occur, whose home the visits take place in, and who is in effective control of the children during the visit." Note, Visitation Rights of a Grandparent Over the Objection of a Parent: The Best Interests of the Child, 15 J.Fam.L. 51, 67 (1976–77). Thus, at one end of the spectrum is custody, which is a relatively permanent arrangement that involves keeping and caring for a child on a continual basis and that affords the custodian the greatest degree of day-to-day control over the child. At the opposite end of the spectrum is visitation, which allows for the least amount of control over the child and contacts of a relatively short duration since visits must be held in the presence of the child's custodian. Between these extremes is partial custody, which involves greater control over the child than does visitation because it takes

place away from the child's custodian, and which may involve contacts of relatively long duration, such as a weekend or a month of summer vacation. (footnotes omitted).

Because there are no statutory provisions which address sibling custody/visitation rights, and in view of the changing face of today's family, perhaps the legislature should delineate, more explicitly, sibling rights in this matter.