622 A.2d 969

**Doreen JACKSON, Appellant,**

v.

**Richard Lee GARLAND and John Walston
and Joyce Walston, his Wife.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1993.

Filed March 29, 1993.

Robert Shreve, Pittsburgh, for appellant.

John Walston, pro se.

Joyce Walston, pro se.

Richard L. Garland, pro se.

Before WIEAND, CIRILLO and MONTGOMERY, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Westmoreland County sustaining the preliminary objections of appellees Richard Lee Garland (Garland) and John Walston and Joyce Walston (the Walstons). We affirm.

Appellant Doreen D. Jackson (Jackson) filed a complaint on November 4, 1991 for partial custody of her sister's minor child, Jaymes Carl Garland. Jaymes was three years-old at the time the complaint was filed. He is the child of Jackson's sister, Denise C. Sabo, and appellee Garland. Garland is

presently incarcerated in North Carolina for killing Sabo, the child's mother.

Jaymes's mother was killed on April 13, 1991. On that same date Jaymes's father was incarcerated. At that time, Jaymes was in the custody of his paternal grandparents pursuant to a de facto custody arrangement. Thereafter, the paternal grandparents filed a complaint against Garland for custody of Jaymes. A consent custody order was entered on September 5, 1991 granting physical custody of Jaymes to the paternal grandparents. The father, though incarcerated, retains legal custody of Jaymes.[1]

On November 4, 1991, Jackson filed a complaint for partial custody of Jaymes.[2] Jackson, the maternal aunt, is married with two children. She alleges that it is in Jaymes's best interest to maintain a relationship with his deceased mother's extended family. Jackson seeks only visitation or partial custody in order to "maintain the relationship established during visits made to Pennsylvania by her deceased sister."

Jackson named Garland and the paternal grandparents as defendants. Garland, as the natural parent and legal custodian of Jaymes, opposed the complaint. Garland determined that "it would not be in the best interest of his son, Jaymes Earl Garland, to have visitation with or be placed in partial custody of Doreen D. Jackson."

Following the filing of Jackson's complaint, a preliminary custody conference was scheduled in accordance with Westmoreland County procedure. At the conference, appellees' counsel raised the affirmative defense of Jackson's lack of standing. Both parties submitted written memoranda on this

1. The record in this case is limited and does not disclose the specific crime of which the father was convicted or his term of imprisonment.

2. Although Jackson has captioned her complaint as one for partial custody, she seeks relief in the form of partial custody or visitation. We point out that the terms "partial custody" and "visitation," though often used interchangeably, each have a distinct legal meaning. Partial custody refers to the right to take possession of a child away from the custodial person for a specified period of time; visitation is the right to visit with a child without physically removing the child from the custodian. 23 Pa.C.S. § 5302.

issue. The court considered the parties' arguments and dismissed Jackson's complaint, stating:

There is no stated public policy to provide a forum for the seeking of partial custody or visitation to the siblings of a deceased parent. Absent a legislative directive and absent any compelling reason to the contrary (such as showing that the child in question had resided with the aunt or uncle seeking partial custody or visitation for a substantial period of time), this Court is unwilling and unable to extend standing to [Jackson].

On appeal, Jackson raises four issues:

1. Whether the trial court erred in determining that appellant's case should have been dismissed by sustaining appellees' preliminary objections?

2. Whether the trial court committed an error by relying upon express statutory provisions to determine whether appellant had standing to pursue a partial custody action?

3. Whether the trial court committed an error by not liberally interpreting the custody statutes to grant appellant standing in this situation?

4. Whether the trial court committed an error by relying on case law to decide this issue since there is none controlling due to the unique facts of this case?

Each of these issues presents the same question: does Jackson have standing to sue for partial custody or visitation of her sister's child?

When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Kyle v. McNamara & Criste,* 506 Pa. 631, 633–34, 487 A.2d 814, 815 (1985); *Baker v.*

*Magnetic Analysis Corp.*, 347 Pa.Super. 188, 191–92, 500 A.2d 470, 472 (1985).

The law protects the natural parent's relationship with his or her child and will not interfere unnecessarily with that relationship, even at the cost of estrangement to the extended family. Freedom of personal choice in matters of family life, and concomitant freedom from unwarranted governmental intrusions, is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Weber v. Weber*, 362 Pa.Super. 262, 524 A.2d 498 (1987). The General Assembly has declared:

> [I]t is the public policy of this Commonwealth, when in the best interest of the child, *to assure reasonable and continuing contact of the child with both parents* after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents *and continuing contact of the child or children with grandparents when a parent is deceased,* divorced or separated.

23 Pa.C.S. § 5301. In furtherance of this policy, the legislature has specified limited circumstances in which governmental intrusion into the family is warranted. *See* 42 Pa.C.S. §§ 6351, 6352 (outlining procedure for initiating dependency proceedings); 23 Pa.C.S. § 2511 (involuntary termination of parental rights); 23 Pa.C.S. § 6301 *et seq.* (taking an abused child into protective custody); 23 Pa.C.S. §§ 5311–5313 (grandparents visitation); 23 Pa.C.S. § 5301 *et seq.* (custody and visitation rights between parents in a divorce action). *See also Weber, supra* (adult daughter whose parents would not allow minor daughter to visit her outside the parents' home because parents did not approve of adult daughter's living arrangements lacked standing to bring action for partial custody of minor daughter over objections of parents, in absence of any statutory authority to do so); *cf. Gradwell v. Strausser*, 416 Pa.Super. 118, 610 A.2d 999 (1992) (grandparents lacked standing to seek legal custody of grandchild from natural parents). The statute makes no provision for ensuring the relationship between the child and a deceased parent's siblings

or extended family. Absent a specific legislative pronouncement to the contrary, this court is powerless to grant standing to the maternal aunt in this case. *Compare Weber, supra* with *Rogers v. Trent,* 594 A.2d 32 (Del.Sup.1991) (where maternal great-aunt and uncle had been granted temporary custody subsequent to divorce and thereafter court granted father's petition for custody, court entertained and granted great-aunt and uncle's petition for visitation; statutes did not limit entitlement to visitation to parents) and *In re Custody of D.M.M.,* 137 Wis.2d 375, 404 N.W.2d 530 (1987) (great aunt, who had previously been guardian of minor child and had had custody of the minor child for six years was not precluded from seeking visitation despite the fact that the Wisconsin visitation statute provided visitation rights only for parents, grandparents, and great-grandparents; the court stated that "there is a distinction between a request for visitation ab initio from a person who never had custody of the child and a visitation request from a party who held custody under a valid custody order.").

We reiterate the trial court's acknowledgment that the application of the law of standing to the facts of this particular case leads to a disturbing result—a child's father, after killing the child's mother, has the ability to preclude the minor child from interaction with the mother's extended family. "The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed." *South Whitehall Township Police Serv. v. South Whitehall Township,* 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989). The law of standing provides that one cannot invoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy. 3 Standard Pennsylvania Practice § 14:12. We do not question Jackson's emotional or personal interest in this matter. Nonetheless, the relevant law centers on the concept of *legal interest* or standing.

Because Jackson does not seek legal custody of the child, or assert that the child has resided with her for a year or more or that she assumed in loco parentis status, her case unfortunately slips through one of the voids in the law. Having specifically addressed parents, grandparents, and great-grandparents in the visitation statute, we are presented with the issue of whether the legislature intended to preclude an adult sibling of a deceased parent from seeking visitation rights.

The legislature has provided that if a parent of an unmarried child is deceased,

> the *parents or grandparents of the deceased parent* may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship.

23 Pa.C.S. § 5311 (emphasis added). *See also* 23 Pa.C.S. § 5312 (providing statutory right of action for grandparents or great-grandparents of a child when the child's parents' marriage is dissolved or parents are separated). Further, the legislature has provided grandparents or great-grandparents with a statutory right of action for partial custody or visitation when the child has resided with them for a period of one year or more and is subsequently removed by the parents. *See* 23 Pa.C.S. § 5313.

Applying our rules of construction, in particular the maxim which provides that the expression of one thing is the exclusion of another—"expressio unius est exclusio alterius," we conclude that the legislature, having expressly granted a right of action for partial custody or visitation to lineal ascendants, intended to restrict it as such. *See Strunack v. Ecker,* 283 Pa.Super. 585, 424 A.2d 1355, *rev'd on other grounds,* 496 Pa. 290, 436 A.2d 1187 (1981) (where certain things are specifically designated in a statute, all omissions should be understood as exclusions). This construction furthers the policy of limited intrusion into the family. A change in this policy is beyond our function as an intermediate appellate court and, therefore, we are compelled to affirm the order sustaining preliminary

objections and dismissing Jackson's complaint. *See Kyle, supra; see also In re Private Detective License of Keibler Detective Agency, Inc.,* 279 Pa.Super. 276, 420 A.2d 1331 (1980) (court does not have the power to create additional authority in a statute if the words therein are clear and free from all ambiguity).

Order affirmed.

WIEAND, J., filed a dissenting statement.

WIEAND, Judge, dissenting:

I respectfully dissent. The majority, in my judgment, confuses the aunt's standing to file an action for visitation and the substantive right of an aunt to obtain an order of court allowing her to visit the child of her deceased sister. I would hold that she has standing to bring the action and would remand for a determination of her substantive right, if any, to an order allowing visitation under the circumstances of this case.