651 A.2d 1119

**KEN R., on behalf of His Daughter, C.R., Appellant,**

**v.**

**ARTHUR Z. and Mary Jane Z., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1994.

Filed Dec. 23, 1994.

Daylin B. Leach, Allentown, for appellant.

Elissa J. Griffith, Allentown, for appellees.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

Ken R. and Mary Jane Z. were divorced in 1981. Mary Jane took custody of the couple's minor child, C.R. Subsequently, Mary Jane married Arthur Z. and the new couple had two daughters, Heather and Alison.[1]

C.R. lived with her mother, stepfather, and two half-sisters until October 1993 when she accused her stepfather of sexual molestation. While Arthur Z. denied the charge, the parties

1. C.R. is now 16 years old, Heather is 4, and Alison is 1.

agreed upon a Protection from Abuse Order which sent C.R. to live with her father, Ken R.

Mary Jane Z. did not believe C.R.'s allegations against Arthur Z., and the incident caused a great deal of friction between mother and daughter. Since this incident, Mary Jane Z. has refused to allow C.R. to see her two half-sisters.

In November 1993, appellant Ken R., on behalf of his daughter C.R., sued for visitation rights as to Heather and Alison. C.R. alleges that she and her half-sisters had developed a very close relationship prior to the incident that forced her to leave her mother and stepfather's household. Appellees Mary Jane and Arthur Z. filed a response alleging that C.R. lacks standing to bring this visitation action. The trial court agreed and the complaint was dismissed. This appeal followed.

The question before us is whether a minor child has standing to sue for visitation privileges as to her half-sisters. The trial court ruled that in the absence of statutory authority conferring such a right on a sibling, there was no standing. We are constrained to agree.

In third-party suits [2] for visitation or partial custody, the test of standing is a stringent one. *See Jackson v. Garland,* 424 Pa.Super. 378, 382, 622 A.2d 969, 971 (1993); *Weber v. Weber,* 362 Pa.Super. 262, 262–66, 524 A.2d 498, 498–99 (1987), *appeal dismissed,* 517 Pa. 458, 538 A.2d 494 (1988); *Herron v. Seizak,* 321 Pa.Super. 466, 469, 468 A.2d 803, 805 (1983). The strict requirement for standing has grown out of a respect for the traditionally strong right of parents to raise their children as they see fit. *E.g., Weber,* 362 Pa.Super. at 262–66, 524 A.2d at 498–99. "The right to raise one's children has long been recognized as one of our basic civil rights. Freedom of personal choice in matters of family life, and the concomitant freedom from unwarranted governmental intru-

2. In custody-related disputes, "third parties" refers to all persons other than the natural parents. *Gradwell v. Strausser,* 416 Pa.Super. 118, 121, 610 A.2d 999, 1001 (1992).

sion, is a fundamental liberty interest protected by the Fourteenth Amendment." *Id.* (citations omitted).

In recognition of this strong parental right, courts have generally found standing in third-party visitation and custody cases only where the legislature has specifically authorized the cause of action. *Jackson*, 424 Pa.Super. at 382, 622 A.2d at 971 (holding that maternal aunt lacked standing to seek partial custody of her deceased sister's minor child in the absence of statutory authority); *Weber*, 362 Pa.Super. at 264, 524 A.2d at 499 (holding that adult sibling lacked standing to seek partial custody of her minor sibling in the absence of statutory authority); *Herron*, 321 Pa.Super. at 805, 468 A.2d at 805 (holding that grandparents lacked standing to sue for visitation because case did not fall under one of three circumstances in which the statute provides grandparents with rights to sue). In the absence of legislation, courts have been unwilling to intervene, casting the issue as one of interference in family matters by individuals with no legal rights at issue. *E.g.*, *Jackson*, 424 Pa.Super. at 971, 622 A.2d at 971. *See also In re C.F.*, 436 Pa.Super. 83, 647 A.2d 253 (1994) (trial court could not compel parents to produce minor daughter for visitation with her minor sibling absent statutory authority justifying the interference). Therefore, the question becomes whether, in the absence of statutory authority, appellant has nonetheless alleged a legal right sufficient to justify interference with a family decision.

In a very similar case, this Court answered that question in the negative. *Weber*, 362 Pa.Super. at 264, 524 A.2d at 499. In *Weber*, an adult sibling sought partial custody of her minor sister after the parents of both girls refused to allow unsupervised visits. *Id.* Based on the strength of the parents' right to decide how to raise their children, and the lack of statutory authority allowing a court to intervene, this Court held that the adult sibling lacked standing to sue for partial custody. *Id.* The Court believed that it should refuse to "intervene in this family matter in which no legal rights are at issue." *Id.* (citing *Herron*, 321 Pa.Super. at 469, 468 A.2d at 805). Therefore, the sibling relationship, by itself, failed to give rise to a

legal right to sue for partial custody or visitation of a minor child when both parents were united against the requested visitation. *Id.*

We are bound by the decision in *Weber.*[3] In the present case, Mary Jane and Arthur Z., both living with their daughters Heather and Alison, have the right to decide how to raise their children. They have the right to decide whether or not their children should be exposed to certain people and influences. As noted in *Weber,* the parents' decision not to allow sibling visitation may not be wise, but it is their decision to make. The legislature has not given siblings the statutory authority to interfere with that decision, and C.R. does not have a legal right to interfere in the absence of statutory authority. Therefore, we hold, as we did in *Weber,* that a sibling lacks standing to maintain a partial custody or visitation action against both parents of a minor sibling.

■ While we are constrained to decide this case against C.R., this decision should not be interpreted as lowering the value that we place on sibling relationships. The importance of sibling relationships is well established in Pennsylvania. *E.g., In re Davis,* 502 Pa. 110, 124, 465 A.2d 614, 621 (1983); *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 325, 421 A.2d 157, 160 (1980); *Wiskoski v. Wiskoski,* 427 Pa.Super. 531, 535, 629 A.2d 996, 998 (1993), *allocatur denied,* 536 Pa. 646, 639 A.2d 33 (1994). As Judge Brosky wrote in his concurrence in *Weber:*

> The relationships between siblings should be closely guarded and nurtured, since it is those relationships that will provide a harbor from which a child may find her way through the often turbulent waters of life. While it is true that parents may serve this function as well, we must realize that more often than not, parents predecease their children, creating the situation where siblings must comfort, support

3. While *Weber* dealt with a petition for partial custody and the present action is for visitation, the analysis is the same. The interference with the parental right is less in cases of visitation, but this lesser interference does not transform the interest of the sibling into a cognizable one in the absence of statutory authority.

and depend upon each other. Even in less drastic circumstances, because siblings are closer in age and have shared life experiences, it would be quite natural for them to seek each other's counsel and companionship on routine matters as well.

*Weber,* 362 Pa.Super. at 266, 524 A.2d at 500 (Brosky, J., concurring). We fully agree with this statement as to the importance of the sibling relationship; however, a moral or a personal interest is not a legal interest. *Jackson,* 424 Pa.Super. at 382–85, 622 A.2d at 971–72 ("[w]e do not question Jackson's emotional or personal interest in this matter. Nonetheless, the relevant law centers on the concept of *legal interest* or standing") (emphasis in original). We urge the legislature to examine this area of law to see if it warrants passage of a statute that would give a legal interest to siblings to sue for visitation, so as to encourage the development of strong sibling relationships.

Order affirmed.